875 So.2d 996 (2004)
STATE of Louisiana
v.
Gary M. HALL a/k/a Gary Ancar a/k/a Marcus Smith and Demethrius O. Barnes.
No. 03-KA-906.
Court of Appeal of Louisiana, Fifth Circuit.
May 26, 2004.
*998 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Juliet Clark, Thomas Block, Bradley Burgett, Assistant District Attorneys, Twenty Fourth Judicial District, Parish of Jefferson, Jane L. Beebe, Louisiana Appellate Project, Gretna, LA, for Defendant/Appellant.
Holli Herrle-Castillo, Louisiana Appellate Project, Marrero, LA, for Defendant/Appellant.
Panel composed of Judges JAMES L. CANNELLA, MARION F. EDWARDS and WALTER J. ROTHSCHILD.
WALTER J. ROTHSCHILD, Judge.
STATEMENT OF THE CASE
Defendants, Gary Hall and Demethrius Barnes, were charged by bill of information on January 16, 2002, with possession of a stolen thing valued over $1,000, in *999 violation of LSA-R.S. 14:69(A).[1] Hall was additionally charged with accessory after the fact to possession of a stolen thing, in violation of LSA-R.S. 14:25 and 14:69(A).[2] Both defendants pled not guilty and filed several pre-trial motions. On June 25, 2002, both defendants proceeded to trial. After a two-day trial, a six person jury found Hall guilty as charged on both counts and Barnes guilty as charged on the one count with which he was charged.
Hall was sentenced to five years at hard labor for possession of a stolen thing valued over $1,000 and two years at hard labor for accessory after the fact to possession of a stolen thing. These sentences were ordered to run concurrently. Barnes was sentenced to eight years at hard labor for possession of a stolen thing valued over $1,000.
Thereafter, the State filed separate multiple bills of information alleging Hall to be a third felony offender and Barnes to be a second felony offender. Hall initially denied the allegations contained in the multiple bill but later stipulated to being a third felony offender, after being advised of his rights. The trial court vacated Hall's original sentence for illegal possession of a stolen thing valued over $1,000, and resentenced him as a multiple offender to six years and seven months at hard labor without the benefit of probation or suspension of sentence, to run concurrently with his sentence for accessory after the fact to possession of a stolen thing. Barnes also initially denied the allegations contained in the multiple bill but later stipulated to being a second felony offender, after being advised of his rights. Barnes' original sentence was vacated and he was resentenced as a multiple offender to nine years at hard labor without the benefit of probation or suspension of sentence.
Both defendants appeal their convictions.

FACTS
At approximately 4:30 a.m. on September 18, 2001, Sergeant Danny Spears, a patrol supervisor with the Plaquemines Parish Sheriff's Office, was returning home to his apartment in the St. Germaine apartment complex on Manhattan Boulevard when he saw two black males pushing a motorcycle. A third black male was walking approximately thirty feet behind the others, and he was carrying his shoes in his hands. As Sgt. Spears approached the men in his unmarked Crown Victoria, the two men stopped pushing the motorcycle, put the kickstand down, and walked away. The third man, later identified as Hall, walked up to Sgt. Spears and told him that the two men were trying to steal his sister's boyfriend's motorcycle. Hall then told Sgt. Spears which way the two men ran but, according to Sgt. Spears, the two men actually ran in the opposite direction.
Sgt. Spears radioed another Plaquemines Parish Sheriff's deputy, William Black, and gave him descriptions of the two men who had been pushing the motorcycle and who had run. Sgt. Spears then ran after the two men. Deputy Black arrived at the scene and saw a black male *1000 running behind the apartment complex. He pursued the subject on foot but subsequently lost sight of him.[3] Thereafter, Sgt. Spears and Deputy Black located one black male, later identified as Barnes, crouched behind some bushes and an air conditioning unit near the apartment complex. Sgt. Spears recognized Barnes as the man who had been pushing the front of the motorcycle. He was ordered out from behind the bushes and placed in handcuffs. Barnes claimed he had been arguing with his girlfriend and was simply out for a walk.
By this time, Deputy Dave Jackson with the Jefferson Parish Sheriff's Office arrived at the scene. Sgt. Spears gave Deputy Jackson a description of Hall, who had left the scene. Deputy Jackson located Hall walking down Manhattan Boulevard wearing slippers and reading a newspaper. Hall initially told Deputy Jackson that he was out jogging, but then stated that he had been in an argument with his girlfriend and was on his way home. Sgt. Spears subsequently identified Hall as the person who had spoken to him at the crime scene.
Kathy Sonnier testified that on the morning of September 18, 2001, she was delivering newspapers for the Times Picayune at the St. Germaine apartment complex on Manhattan Boulevard. She saw a black male, who she later identified by photograph as Gary Hall, running with shoes in his hands. He stopped and told her, "Good morning," and then quickly walked away. When he was approximately 15-20 feet away, she heard him yell, "Where did you go?" but he was not talking to her.
At trial, Michael Durr testified that he lived in the St. Germaine apartment complex in September 2001. He stated that he parked his Honda motorcycle outside his apartment on September 17, 2001 and last saw it there at 12:30 a.m. on September 18, 2001. Mr. Durr explained that he was awakened between 4:00-4:30 a.m. by the police at which time he discovered his motorcycle was gone. He was led down the road where he saw a motorcycle that he identified as his own. The ignition switch was damaged and there were scrapes on the bike. Mr. Durr stated that he did not give anyone permission to move his motorcycle, and he did not know either of the defendants. Mr. Durr testified his motorcycle was worth more than $1,000 and that the damage done to the bike was estimated at $1,200.

DISCUSSION
Defendants Hall and Barnes both argue that the evidence was insufficient to support their convictions. In Hall's first assignment of error, he argues that the trial court erred in failing to grant his motion for a new trial because there was insufficient evidence to support his convictions for possession of stolen property and accessory after the fact. In Barnes' second assignment of error, he alleges that the evidence was insufficient to uphold his conviction, because the State failed to prove that he was the person seen by the police pushing the motorcycle.[4]
The standard of review for the sufficiency of the evidence to uphold a conviction *1001 is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the State proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). The Jackson standard of review is an objective standard for testing all of the evidence, both direct and circumstantial, for reasonable doubt. State v. Marcantel, 00-1629 (La.4/3/02), 815 So.2d 50, 56. The actual trier of fact is presumed to have acted rationally until it appears otherwise. State v. Mussall, 523 So.2d 1305, 1310 (La.1988).
Hall and Barnes were charged with illegal possession of a stolen thing valued over $1,000, a violation of LSA-R.S. 14:69. In order to convict a defendant of this offense, the State must prove beyond a reasonable doubt that the defendant 1) intentionally possessed, procured, received or concealed, 2) anything of value, 3) which had been the subject of any robbery or theft, 4) where the circumstances indicate that the offender knew or had good reason to believe that the thing was the subject of these offenses, and 5) the value of the item stolen exceeded $500. See State v. Corkern, 593 So.2d 1259, 1260 (La.1992); State v. Brooks, 01-1073 (La.App. 5 Cir. 2/26/02), 811 So.2d 1066, 1069.

Hall's convictions
Hall contends that the State failed to prove that he was in possession of the motorcycle. He argues that he was only seen thirty feet away from the stolen property and there was no evidence that he ever touched the motorcycle. The State argues in its brief that defendant was a principal to possession of a stolen thing.
To support a conviction for illegal possession of stolen property, the State does not have to prove actual possession. It is sufficient if the State shows constructive possession. Constructive possession exists when the property is within the defendant's dominion and control. State v. Brooks, supra.
A principal is defined as "[a]ll persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime." LSA-R.S. 14:24. Only those persons who "knowingly participate in the planning or execution of a crime" are principals to that crime. State v. Pierre, 93-0893 (La.2/3/94), 631 So.2d 427, 428. An individual may only be convicted as a principal for those crimes for which he personally has the requisite mental state. Id. The mental state of one defendant may not be imputed to another defendant. State v. Coleman, 02-345 (La.App. 5 Cir. 9/18/02), 829 So.2d 468, 471.
Mere presence at the scene of a crime does not make one a principal to the crime. State v. Kirkland, 01-425 (La.App. 5 Cir. 9/25/01), 798 So.2d 263, 269, writ denied, 01-2967 (La.10/14/02), 827 So.2d 415. However, "`it is sufficient encouragement that the accomplice is standing by at the scene of the crime ready to give some aid if needed, although in such a case it is necessary that the principal actually be aware of the accomplice's intention.'" State v. Kirkland, supra at 269, quoting State v. Anderson, 97-1301 (La.2/6/98), 707 So.2d 1223, 1225.
In the present case, Sgt. Spears testified that, when he came upon the scene, Hall was walking approximately thirty feet behind the motorcycle, which was being pushed by two men, and he was carrying his shoes in his hands. Although Sgt. Spears noted in his police report that all *1002 three men were pushing the motorcycle, he stated at trial that his report contained a mistake, because only two men were pushing the bike. He testified that he did not see Hall pushing the motorcycle and he did not know if Hall ever touched it. Sgt. Spears stated that, as he drove toward the men, the three men appeared to be talking. However, on cross-examination, he admitted that he did not know for sure that Hall was talking to the other two men.
After a thorough review of the entire record before us, we find that the evidence is insufficient to show that Hall actually or constructively possessed the motorcycle. Other than Sgt. Spears' suspicion that Hall was involved, there is nothing to show that Hall exercised any dominion or control over the motorcycle. The motorcycle was being pushed in the parking lot of an apartment complex by two men, but not Hall. There was no evidence concerning Hall's relationship with the two men who were actually pushing the motorcycle, except that he tried to help them by directing the police in the opposite direction from where they ran. While the record shows that Hall was close to the motorcycle, the evidence does not establish that it was within his dominion and control.
Further, the evidence is insufficient to show that Hall was a principal to illegal possession of the stolen motorcycle. As stated above, Hall's mere presence at the scene of the crime, or in this case his close proximity to people in possession of the stolen property, does not make him a principal to the crime. Also, the fact that Hall left the scene does not make him a principal. See State v. Wright, 01-0322 (La.12/4/02), 834 So.2d 974, 983, cert. denied, ___ U.S. ___, 124 S.Ct. 82, 157 L.Ed.2d 62 (10/6/03). A person acting as a lookout can be convicted as a principal. See State v. Dunn, 94-776 (La.App. 5 Cir. 2/15/95), 651 So.2d 1378, 1389-1390. However, it is highly unlikely that one could infer from Hall's actions that he was a lookout, because he was walking behind the motorcycle with his shoes off.
The evidence must show that defendant aided in the commission of the possession of stolen property or directly or indirectly counseled or procured another to possess stolen property. The record shows that Hall was walking thirty feet behind the motorcycle carrying his shoes in his hand. The fact that Hall was carrying his shoes in his hand, while suspicious, does not in any way show he aided in possessing the motorcycle or counseled the other two men to possess the motorcycle. Sgt. Spears testified that the three men appeared to be talking but stated he could not testify with any certainty that Hall engaged in any conversation with the two men who were pushing the motorcycle. The only evidence that suggested any relationship between Hall and the two men was Hall's comment, "where did you go?," which was overheard by Ms. Sonnier after the incident. Based on earlier testimony that no one else was around, a reasonable trier of fact could reasonably conclude that Hall was directing his comment to one of the two men involved. However, Hall was never definitively seen interacting with the two men who were in possession of the motorcycle.
Although we have considered the evidence in the light most favorable to the prosecution, we find that a rational trier of fact could not have concluded beyond a reasonable doubt that the State proved the essential elements required to convict Hall of illegal possession of a stolen thing valued over $1,000. Accordingly, we reverse Hall's conviction for illegal possession of a stolen thing valued over $1,000, and we vacate his sentence of six years and seven months for this crime.
*1003 Hall also alleges that the evidence was insufficient to support his conviction for accessory after the fact, because the State failed to prove he aided Barnes after knowing Barnes had committed a felony. LSA-R.S. 14:25 defines an accessory after the fact as "any person who, after the commission of a felony, shall harbor, conceal, or aid the offender, knowing or having reasonable ground to believe that he has committed the felony, and with the intent that he may avoid or escape from arrest, trial, conviction, or punishment." The type of "aid" contemplated by LSA-R.S. 14:25 includes volunteering false information to law enforcement officers. State v. Chism, 436 So.2d 464, 467, footnote 1, (La.1983). The statute requires only the general intent of the offender that the person who committed the felony will escape arrest, trial, conviction or punishment, and intent may be proven by circumstantial evidence or inferred. Id. at 467-468.
When Sgt. Spears arrived on the scene, Hall walked up to him and told him the other two men were stealing his sisters boyfriends motorcycle. Hall then pointed in a direction and advised Sgt. Spears that the two men ran in that direction. However, Sgt. Spears observed that the two men actually ran in the opposite direction than what Hall indicated. Additionally, Ms. Sonnier, who was delivering newspapers in the apartment complex at the time of the incident, testified that Hall told her good morning and walked past her. She later saw Hall and heard him yell, "where did you go?" Ms. Sonnier testified Hall was not talking to her.
Hall contends it is absurd that he would try to direct the police officer in the wrong direction when the officer saw where the two men ran. He asserts his gesture in pointing in a specific direction while talking to Sgt. Spears was misunderstood. However, Sgt. Spears testified that Hall told him "they were running that way" while pointing him in the opposite direction from where the men were running. The jury obviously believed Sgt. Spears and no evidence was offered to contradict Sgt. Spears testimony.
The fact that Barnes did not escape capture does not reduce defendants actions to attempted accessory after the fact, as suggested by Hall in his brief. Accessory after the fact is not contingent on the success of a defendants action in aiding or hiding a person who has committed a felony. In this case, it is the intent of the defendants actions that constitutes the offense. The record shows Hall purposefully directed the officer in the wrong direction with the intent of helping the other two men escape.
The State presented evidence that Hall knew a felony had been committed when Sgt. Spears testified that Hall told him the men were stealing the motorcycle. The State then presented evidence, again through Sgt. Spears, that Hall voluntarily gave incorrect information to the police about the direction in which the men ran. This evidence supports a conclusion that Hall intended to aid the men by helping them escape capture. Accordingly, viewing the evidence in a light most favorable to the prosecution, we conclude that the evidence is sufficient for a reasonable trier of fact to find beyond a reasonable doubt that Hall was guilty of accessory after the fact to possession of a stolen thing valued over $1,000.

Barnes' conviction
Barnes does not argue that the State failed to establish any of the essential statutory elements of his conviction for possession of a stolen thing. Rather, he contends that the State failed to prove beyond a reasonable doubt his identity as the perpetrator. He challenges Sgt. *1004 Spears' identification of him on the basis that Sgt. Spears observed the perpetrators from a distance of sixty feet away at 4:30 a.m. and for only a few seconds. Additionally, Barnes asserts his clothing did not match the description of the clothing worn by the perpetrator.
In addition to proving the statutory elements of the charged offense, the State is required to prove the identity of the perpetrator. State v. Vasquez, 98-898 (La.App. 5 Cir. 2/10/99), 729 So.2d 65, 69. Where the key issue is identification, the State is required to negate any reasonable probability of misidentification in order to carry its burden of proof. Id.
To prove identification in this case, the State offered the testimony of Sgt. Spears. He testified that, on the morning of the incident, he saw a tall black male, six feet two inches, with glasses, wearing a red shirt and pushing the motorcycle from the front handlebars. He described the second person pushing the motorcycle from the rear as a shorter black male. He stated that it was dark outside but noted that the parking lot of the apartment complex was well-lit by street lights. Sgt. Spears explained that his vehicle headlights were on which helped illuminate the three men. He testified that he had no problems seeing and was able to see the men's faces. It was established that Sgt. Spears viewed the perpetrators for ten to fifteen seconds before they ran.
Sgt. Spears testified that he chased after the two men who ran. Although he lost sight of them, Sgt. Spears noted there was no one else in the area. He stated that the man he found hiding behind the bushes and air conditioning unit was the person he saw pushing the front handlebars of the motorcycle. Sgt. Spears identified Barnes in court as the person he saw pushing the motorcycle and hiding behind the air conditioning unit.
Sgt. Spears stated that he believed Barnes was wearing a red shirt at the time of his arrest but he admitted that he was not sure. Deputy Dave Jackson, who arrived on the scene after Barnes was detained, testified that Barnes was wearing a yellow shirt, and the parties subsequently stipulated that Barnes was wearing a yellow shirt at the time of his arrest.
It is the fact finder's function to determine the weight of the evidence bearing on the defendant's identification. It is not the appellate court's function to reevaluate the credibility choices made by the fact finder. State v. Spencer, 93-571 (La. App. 5 Cir. 1/25/94), 631 So.2d 1363, 1370, writ denied, 94-488 (La.2/3/95), 649 So.2d 400.
In the present case, the jury was fully aware of the clothing discrepancy. The jury heard Sgt. Spears testify that the person pushing the motorcycle was wearing a red shirt and that Barnes was wearing a red shirt when he was apprehended shortly after the incident. The jury also heard the stipulation of the parties that Barnes was actually wearing a yellow shirt at the time he was apprehended. Despite this discrepancy, the jury apparently found Sgt. Spears to be credible.
Considering all of the evidence, the color of the perpetrator's shirt was minor. Sgt. Spears admitted he was not one hundred percent sure that Barnes was wearing a red shirt at the time of his arrest. Sgt. Spears described the perpetrator who was pushing the front of the motorcycle as a tall black male with glasses. During trial, Barnes was asked to stand up so the jury could see his height. Based on the comments in the record, it appears that Barnes is over six feet tall. The record further reflects Barnes wears glasses, as it was noted that he was wearing them at trial. Additionally, Sgt. Spears positively *1005 identified Barnes in court as the perpetrator who was pushing the front of the motorcycle. Despite the discrepancy regarding the color of the perpetrator's shirt, the jury obviously believed the officer's testimony that defendant was the perpetrator, and this conclusion was reasonable.
Considering the evidence in a light most favorable to the prosecution, we find that there was sufficient evidence for a rational trier of fact to conclude beyond a reasonable doubt that defendant committed the offense. Thus, Barnes' second assignment of error is without merit.
In his first assignment of error, Barnes argues that the trial court erred in failing to sustain his objections to certain prejudicial statements made by the prosecutor during closing arguments. Barnes asserts that the prosecutor made statements that suggested to the jury that he had an obligation to present evidence. Barnes specifically references those statements made by the prosecutor regarding the lack of testimony corroborating Barnes' claim that he had a fight with his girlfriend and was simply walking home when he was stopped by the police. Barnes contends the prosecutor's statements were impermissible comments on his failure to testify and that the trial court should have granted his motion for a mistrial or, at least, admonished the jury to disregard the prejudicial remarks. Barnes also complains that the prosecutor's remarks suggesting that he was not a working member of society like the victim were prejudicial and warranted an admonishment by the trial court.
During closing arguments, the prosecutor stated:
So, what is the defense for Mr. Barnes that has been presented to you? There's been no evidence but on argument that the cops had the wrong person, they ID'd the wrong person....
[Defense counsel] wants you to believe that he was justhappened by, he had got into an argument with his girlfriend and was just hiding behind the AC unit because he didn't want to be caught in some kind of infidelity with his wife. Where is the evidence of that? Where is the evidence? Like I told you, the only evidence you can consider is what comes from that stand. Has there been any evidence of that? Of course he couldn't call his wife because then she would know about the infidelity. Well, where's the girlfriend? Why didn't she come to testify yet, "He was with me. We had an argument. He left my apartment"?
At that point, defense counsel objected on the grounds that the prosecutor was making an improper argument that defendant had to produce evidence. The prosecutor responded that defense counsel had made allegations during his opening statement that there was going to be testimony about Barnes' infidelity and an argument between Barnes and his girlfriend. The prosecutor maintained he was only arguing about the lack of evidence and not commenting on defendant's Fifth Amendment right. The trial court overruled the objection and the State's closing argument continued. The prosecutor stated:
But there's been no wifebut there's been no girlfriend to come and testify as well that, "Yeah, we were together. We got in a fight. He left my apartment. I live nearby and he was just walking in that general direction." There's been no testimony of that. The only time that you hear anything about I had a fight with my girlfriend or arguing with my girlfriend is from his statement to Sergeant Spears. That's the only time. His self-serving statement, that's the only time you heard anything about that.
*1006 Defense counsel interrupted and moved for a mistrial on the basis that the prosecutor's statements required defendant to give an explanation as to why he did not call the witness. Defense counsel then explained to the court that he could not locate the girlfriend and that Barnes could not assist in finding the girlfriend because he was incarcerated from the time of the incident through trial. The trial court inquired into the efforts made to find the girlfriend and concluded that witnesses other than defendant could have testified and explained the absence of the girlfriend. The trial court denied the motion for a mistrial.
Closing arguments in criminal cases are restricted to evidence admitted at trial, lack of evidence, conclusions of fact that may be drawn therefrom, and the law applicable to the case. LSA-C.Cr.P. art. 774; State v. Fernandez, 03-987 (La. App. 5 Cir. 12/30/03), 864 So.2d 764, 768. A prosecutor has considerable latitude in making closing arguments. State v. Taylor, 93-2201 (La.2/28/96), 669 So.2d 364, 374, cert. denied, 519 U.S. 860, 117 S.Ct. 162, 136 L.Ed.2d 106 (1996). A conviction will not be reversed due to improper remarks during closing argument unless the reviewing court is thoroughly convinced that the remarks influenced the jury and contributed to the verdict. State v. Fernandez, supra.
A prosecutor's comments made during closing arguments referencing the lack of evidence are permissible under LSA-C.Cr.P. art. 774. In State v. Smith, 357 So.2d 798, 802 (La.1978), defendant claimed the prosecutor's remarks during closing argument constituted an impermissible reference to the failure of defendant to produce alibi witnesses. In Smith, the prosecutor suggested that if defendant were innocent of the crime, he would have had four or five alibi witnesses in the group with whom he claimed to have been playing cards. The Louisiana Supreme Court found the prosecutor's remark, taken in context, was simply a reference to a lack of evidence which was permissible under LSA-C.Cr.P. art. 774.
Also, in State v. Forrest, 95-31 (La.App. 5 Cir. 2/14/96), 670 So.2d 1263, 1269-1270, writ denied, 96-654 (La.6/28/96), 675 So.2d 1117, defendant moved for a mistrial after the prosecutor remarked during closing argument that there had been no alibi defense presented that defendant was somewhere else when the crime happened. The trial court denied the motion for a mistrial. On appeal, this Court found the prosecutor's reference to the lack of an alibi defense was a permissible comment on the lack of evidence. This Court noted that the comment did not constitute a comment on defendant's failure to testify, reasoning that an alibi defense may consist of testimony or evidence other than the defendant's testimony.
In the present case, the prosecutor's comments referencing the lack of witnesses to corroborate defendant's statement to the police at the time of his arrest were permissible comments on the lack of evidence. At the time of the remarks, the prosecutor was in the process of reviewing the evidence and explaining to the jury how the evidence proved each element of the crime. The prosecutor did not focus the jury's attention on the defendant's failure to testify but rather was simply pointing out the lack of evidence to support the defendant's contentions that he was a married man who was coming from his girlfriend's house.
Defendant also takes exception to a comment made by the prosecutor during the State's rebuttal closing argument. The prosecutor stated:

*1007 We're here because at 4:30 in the morning on September the 18th Demethrius Barnes and Gary Hall were stealing this man'ssee, nobody talks about this man, Michael Durr. Michael Durr is the victim here. This person, a person who workswho works in the community who has a job
Defense counsel objected on the basis that the statement was prejudicial and inflammatory because it made the inference that Barnes did not work. Defense counsel did not request that an admonition be given to the jury. The trial court overruled the objection.
The record does not support a finding that these remarks made by the prosecutor were so inflammatory or prejudicial that they influenced the jury to convict Barnes. The comment was made during a lengthy closing argument by the State. A simple remark that the victim worked is not so persuasive as to have caused the jury to convict Barnes of possession of a stolen thing. Further, the evidence established Barnes' guilt.
For the foregoing reasons, we find that the trial court did not err in failing to sustain Barnes' objections to the prosecutor's remarks during closing argument, and Barnes' first assignment of error is without merit.

ERROR PATENT DISCUSSION
The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). We note the following errors which require corrective action.
First, the minute entry and amended minute entry indicate that only five jurors retired to deliberate and the names of only five jurors are listed. However, the jury was polled and the transcript reflects, "[t]he Court has examined the return of the poll in the presence of counsel. The Court finds that as to each defendant and as to each count thereof there are six of six who agree." Additionally, the polling slips were included in the exhibits on appeal and there are six slips indicating that six jurors deliberated and reached a verdict. Furthermore, neither defendant contends there was an improper jury composition. Where there is a discrepancy between the minute entry and the transcript, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La. 1983). In order to ensure an accurate record, we remand the matter and order the minute entries to be corrected to reflect the correct number of jurors and to add the name of the sixth juror who deliberated, Laurie L. Angelona.
Second, there are discrepancies between the transcript and Barnes' multiple offender commitment. Barnes' original commitment correctly reflects that he was convicted of receiving stolen things of $500 or greater, while his multiple offender commitment erroneously reflects that he was convicted of receiving stolen things of $100 or greater. As noted above, the transcript prevails. State v. Lynch, supra. Accordingly, the matter is remanded to the trial court to amend Barnes' multiple offender commitment to conform to the sentencing transcript.

DECREE
For the reasons set forth above, we affirm Barnes' conviction and sentence for illegal possession of a stolen thing valued over $1,000, and we affirm Hall's conviction and sentence for accessory after the fact to illegal possession of a stolen thing. We reverse Hall's conviction for illegal possession of a stolen thing valued over $1,000 and vacate his sentence of six years and seven months for this crime. Finally, we remand the matter and order the trial *1008 court to correct the minute entries to reflect the accurate names and number of jurors who deliberated, and to amend Barnes' multiple offender commitment to conform to the sentencing transcript.
AFFIRMED IN PART; REVERSED IN PART; REMANDED WITH INSTRUCTIONS.
NOTES
[1] For purposes of punishment, LSA-R.S. 14:69 categorizes possession of a stolen thing by the value of the thing stolen. In the bill of information, the value of the thing stolen was listed as over $1,000. Subsection (B)(1) provides the punishment for possession of a stolen thing valued over $500. There is no separate category for a thing valued over $1,000.
[2] Both defendants were originally charged in a bill of information on October 5, 2001 with theft of a motorcycle valued over $500, in violation of LSA-R.S. 14:67. However, the bill was amended on January 16, 2002 to charge the defendants with the crimes for which they were convicted.
[3] William Black was deemed unavailable for trial and his prior sworn testimony from a motion to suppress hearing was used at trial after portions of it were excised.
[4] In State v. Hearold, 603 So.2d 731, 734 (La.1992), the Louisiana Supreme Court stated that, when the issues on appeal relate to both sufficiency of the evidence and one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. Accordingly, Barnes' assignments of error are addressed out of order, because sufficiency of the evidence must be considered first.