CHEHARDY, C.J.
|2Pefendant Kerwin Williams appeals his conviction of possession with intent to distribute cocaine and his multiple offender adjudication. For the reasons that follow, we affirm defendant’s underlying conviction, his multiple offender adjudication, and his enhanced sentence.
PROCEDURAL HISTORY
On July 14, 2014, the Jefferson Parish District Attorney filed a bill of information charging defendant as a principal to possession with intent to distribute cocaine, a violation La. R.S. 40:967(A).[1] Defendant entered a plea of not guilty and after waiving his right to trial by jury, proceeded to a bench trial on May 28, 2015. He was found guilty as charged. On June 15, 2015, he was sentenced to ten years at hard labor with the first two years to be served without benefit of probation, parole, or suspension of sentence. That same day, the State filed a multiple offender bill of information alleging defendant was a second felony offender. Defendant denied the bill’s allegations and on July 14, 2015, *1209 filed a motion to quash. On July 17, 2015, the court heard and denied this motion. The court adjudicated defendant a second felony offender, vacated his original sentence, and imposed an enhanced sentence of seventeen years at hard labor with the first two years to be served without benefit of probation, parole, or suspension of sentence.[2] Defendant orally moved for an appeal after imposition of sentence. A written motion for appeal followed on July 22, 2015.
PRELIMINARY ISSUE
It is well established that a defendant may only appeal from a final judgment of conviction when sentence has been imposed. State v. Chapman, 471 So.2d 716 (La.1985); State v. London, 316 So.2d 743 (La.1975); State v. Moore, 260 La. 299, 256 So.2d 96 (1971); La.C.Cr.P. art. 912. After sentence has been imposed, a motion for appeal must be made within the time period specified by La.C.Cr.P. art. 914. Under this article, unless a motion to reconsider is filed, a motion for appeal must be made, whether orally or in writing, no later than “thirty days after the rendition of the judgment or ruling from which the appeal is taken.” See La.C.Cr.P. art. 914(B). If a defendant fails to move for an appeal within this time, the conviction and sentence become final and the defendant loses the right to obtain an appeal by simply filing a motion for appeal in the trial court. State v. Williams, 12-687 (La.App. 5 Cir. 05/16/13), 119 So.3d 228, 237, writ denied, 13-1335 (La.12/02/13), 126 So.3d 500. To obtain reinstatement of his right to appeal, the defendant must timely file in the trial court an application for post-conviction relief seeking an out-of-time appeal. Id.; State v. Counterman, 475 So.2d 336 (La.1985).
Here, defendant was convicted on May 28, 2015 and was sentenced on June 15, 2015. He did not file a motion to reconsider sentence. Under La.C.Cr.P. art. 914(B)(1), he had thirty days from his date of sentencing, or until July 15, 2015, to appeal his conviction and sentence. Defendant did not move for an appeal until July 17, 2015, when he did so orally, after having been adjudicated and sentenced as a second felony offender.' Additionally, it is not clear from that oral appeal whether defendant intended to appeal his underlying conviction[3] or only his multiple offender adjudication and sentence. It was not until July 22, 2015, in his written motion for appeal, that defendant expressly sought review of “his conviction and sentence that was handed down on June 15, 2015[J”
As the foregoing demonstrates, defendant did not timely appeal his underlying conviction. On the other hand, defendant timely appealed his multiple offender adjudication and sentence. As a result, defendant’s first assignment of |4error, which relates to his underlying conviction, is not properly before us, though his second, assignment of error is, since it relates to his multiple offender adjudication. Under these circumstances, while we could address defendant’s second assignment of error, dismiss the appeal in part with respect to his first assignment of error, and instruct defendant to obtain reinstatement of his right to appeal his underlying con *1210 viction,[4] this-would only result in piecemeal litigation and would further delay defendant’s right to appellate review. Consequently, in the interests of judicial economy and equity, we will consider both assignments of error in this opinion. See State v. S.J.I., 06-2649 (La.6/22/07), 959 So.2d 483.
FACTS
On June 19, 2014, Detective David Dalton and Detective Jeffrey Reynolds of the Jefferson Parish Sheriffs Office were conducting a proactive patrol in Bridge City in Jefferson Parish. The officers were in an unmarked police vehicle patrolling 4th Street, an area of high crime and narcotics trafficking where previous arrests had been made. Around 8:30 p.m. the officers observed a silver Pontiac Grand Prix parked in front of an abandoned building, a location reputed for narcotics distribution. Although it was dark, the scene was illuminated by street lamps and lights from nearby homes. The officers parked their vehicle and began surveillance. They observed three occupants in the Pontiac: a black male driver, a black male front passenger, and a black male rear passenger. During the officers’ surveillance, the rear passenger exited the vehicle and approached two individuals in the driveway of the abandoned building. The officers observed what appeared to be a hand-to-hand narcotics transaction when the rear passenger handed each individual an object in exchange for cash.
While this transaction was occurring, the Pontiac drove down to the dead end of 4th Street, U-turned, and came back, parking at a distance from the [^transaction, but approximately one car’s length in front of the officers. Through their untinted windshield, both officers were able to see the driver’s face through the Pontiac’s untinted windshield.
After completing the transaction, the rear passenger summoned the Pontiac with a hand signal. The vehicle proceeded up the street, the passenger climbed in, and it departed the scene. The officers followed. When the Pontiac ran a stop sign, the officers activated their lights and sirens to initiate a traffic stop. But the Pontiac accelerated and fled, so the officers gave chase. During this pursuit, the rear passenger discarded from the rear window clear plastic bags containing a white rock-like substance.
The Pontiac eventually came to a stop and the three occupants fled on foot. Detective Dalton identified himself as law enforcement and ordered the men to stop, but they continued to flee. He followed on foot, while Detective Reynolds remained with the Pontiac. Detective Dalton apprehended the rear passenger, but the driver and front passenger escaped. The rear passenger, who had engaged in the hand-to-hand narcotics transaction, was advised of his rights, placed under arrest, and searched incident to that arrest. He was identified as co-defendant Torrian Veal. A white rock-like substance, 241 dollars, and two cell phones were located in his pockets. Detective Dalton also recovered the plastic bags that Mr. Veal had discarded from the Pontiac. These bags contained several pieces of the white rock-like substance. These substances seized from Mr. Veal’s person and the roadway later tested positive for cocaine.
Meanwhile, Detective Reynolds observed in plain view inside the Pontiac a white rock-like substance on the rear seat where Mr. Veal had been sitting. This *1211 subsequently tested positive for cocaine. Detective Reynolds further located three cell phones outside the passenger side of the vehicle. After Detective Dalton advised Detective Reynolds via radio that, he had apprehended the rear passenger | fiand found in his possession what he suspected to be contraband, Detective Reynolds conducted a search of the Pontiac. He located two traffic tickets behind the visor of the driver’s seat. These tickets were dated June 15, 2014 and had been issued to Kerwin Williams, defendant.
Approximately six days later, the officers contacted the owner of the Pontiac, who was not defendant. The owner explained that she had loaned the car to someone nicknamed “Homie” who left traffic tickets inside the car. Based on this information, the officers ran an NCIC check of the name on the traffic tickets. This revealed that defendant was on parole for a previous narcotics offense. Detective Dalton contacted defendant’s parole officer who later located defendant. Defendant was brought to the detective bureau, and upon coming into contact with him, both Detective Dalton and Detective Reynolds immediately recognized defendant as the driver of the Pontiac. At this point, defendant was advised of his rights and placed under arrest. At trial, Detective Dalton and Detective Reynolds both identified defendant as the driver of the Pontiac on the evening of June 19, 2014.
The State and defense also made the following stipulations at trial: if called, Michael Cole would be qualified as an expert in the field of forensic science, specifically with regard to the analysis and comparison of narcotics, including marijuana and cocaine; Mr. Cole examined items as reflected in his report that was prepared in connection with this case; and Mr. Cole would offer opinions consistent with his report. The State and defense further stipulated to the introduction of Mr. Cole’s report, which reflected that the substances contained in four plastic bags tested positive for cocaine and the substance contained in one plastic bag tested positive for marijuana.
JjDISCUSSION
On appeal, defendant raises two assignments of error. First, he argues that the evidence was insufficient to support his conviction, and particularly contends that he was misidentified by the police. . Second, he argues that the district court erred in denying his motion to quash the multiple offender bill of information.

Assignment of Error One

We first address defendant’s argument regarding the sufficiency of the evidence. See State v. Hearold, 603 So.2d 731, 734 (La.1992) (‘When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing -court should first determine the sufficiency of the evidence.”).
In reviewing the sufficiency of the evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements' of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Neal, 00-0674 (La.6/29/01), 796 So.2d 649, 657, cert. denied, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002); State v. Mickel, 09-0953 (La.App. 5 Cir. 5/11/10), 41 So.3d 532, 534, writ denied, 10-1357 (La.1/7/11), 52 So.3d 885.
The directive that the evidence be viewed in the light most favorable to the prosecution requires the reviewing court to defer to the actual trier of fact’s rational credibility calls, evidence weighing, and in *1212 ference drawing. State v. Caffrey, 08-0717 (La.App. 5 Cir. 5/12/09), 15 So.3d 198, 202, writ denied, 09-1305 (La.2/5/10), 27 So.3d 297, This deference to the fact finder does not permit a reviewing court to decide whether it believes a witness or whether the conviction is contrary to the weight of the evidence. Id. As a result, under the Jackson standard, a review of the record for sufficiency of the evidence does not require the reviewing court to determine whether the evidence at the trial established guilt beyond a reasonable doubt, but whether, upon review of the whole record, any rational trier of fact would have found guilt beyond a reasonable doubt. State v. Jones, 08-0020 (La.App. 5 Cir. 4/15/08), 985 So.2d 234, 240.
In making this determination, a reviewing court will not re-evaluate the credibility of witnesses or re-weigh the evidence. Caffrey, swpra. Indeed, the resolution of conflicting testimony rests solely with the trier of fact, who may accept or reject, in whole or in part, .the testimony of any witness. See State v. Bailey, 04-0085 (La.App. 5 Cir. 5/26/04), 875 So.2d 949, 955, writ denied, 04-1605 (La.11/15/04), 887 So.2d 476, cert. denied, 546 U.S. 981, 126 S.Ct. 554, 163 L.Ed.2d 468 (2005), Thus, in the absence of internal contradiction or irreconcilable conflicts with physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient to support a conviction. State v. Dixon, 07-0915 (La.App. 5 Cir. 3/11/08), 982 So.2d 146, 153, writ denied, 08-0987 (La.1/30/09), 999 So.2d 745.
Defendant was charged with and convicted of being a principal to possession with intent to distribute cocaine, a violation of La. R.S. 40:967(A). The offense of possession with intent to distribute a controlled dangerous substance is comprised of two elements: (1) a knowing and intentional possession of the substance (2) with a specific intent to distribute it. See State v. Paul, 15-501 (La.App. 5 Cir. 01/27/16), 185 So.3d 188, 199; State v. Elzie, 343 So.2d 712, 713-14 (La.1977).
Possession can be actual or constructive. See State v. Trahan, 425 So.2d 1222, 1226 (La.1983). Actual possession amounts to physical custody of the object. See id. Constructive possession is when the object is not in the person’s physical custody, but is under his dominion and control such that he has the ability to reduce the object to actual possession. See id.; United States v. Posner, 868 F.2d 720, 723 (5th Cir.1989). Also included within- the concept of possession of a controlled dangerous substance, whether actual or constructive, is the necessary element of scienter or guilty knowledge. See Trahan, supra. Therefore, a defendant’s mere presence in the area where drugs are found or mere association with the person found in possession of the drugs is insufficient to constitute constructive possession. State v. Washington, 11-716 (La.App. 5 Cir. 03/13/12), 90 So.3d 1157, 1162. Similarly, mere ownership of a vehicle containing contraband is not sufficient to prove constructive possession of the contraband. Id. Yet, possession of-the keys to a vehicle containing contraband has been found sufficient to establish constructive possession of the contraband. See United States v. Martinez, 588 F.2d 495, 498-99 (5th Cir.1979) (finding the defendant, who was neither the owner nor the driver of the vehicle, was in constructive possession of contraband found in the vehicle because he possessed the key to the trunk of the vehicle and keys to the two chests of marijuana inside the trunk of the vehicle).[5]
*1213 The jurisprudence makes clear that the determination of whether a person is in possession of a controlled dangerous substance depends upon the peculiar facts and circumstances of each case. See Trahan, supra. Factors that may establish dominion or control necessary for constructive possession include but are not limited to the defendant’s knowledge that the drugs were in the area; the defendant’s relationship with the person found to be in actual possession; the defendant’s access to the area where the drugs were found; evidence of recent drug use by the defendant; the presence of paraphernalia; and evidence that the area was frequented by drug users. Paul, supra; Washington, supra.
With regard to the intent element, possession with intent to distribute a controlled dangerous substance requires specific intent, which “exists when the | ^circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.” La. R.S. 14:10(1). Therefore, the intent element may be established by circumstances surrounding the defendant’s possession that permit reasonable inferences of an intent to distribute. See State v. Melancon, 14-221 (La.App. 5 Cir. 09/24/14), 151 So.3d 100, 109, writ denied, 14-2161 (La.5/22/15), 170 So.3d 982. Factors that may permit such inferences include but are not limited to: previous attempts to distribute;[6] whether the drug was in a form consistent with distribution to others; the amount of the drug; expert or other testimony showing the amount found in the defendant’s possession to be inconsistent with personal use only; and paraphernalia evidencing an intent to distribute. Id. Such paraphernalia includes items like a scale, large sums of cash, and weapons. See id. at 109-10. Absent circumstances -from which an intent to distribute may -be inferred, the mere possession of drugs does not evidence an intent to distribute, unless the quantity is so large that no other inference is possible. Id. at 110.
With the foregoing in mind, we turn to the facts of this case. We first consider the element of identity and defendant’s argument that he was misidentified by Detective Dalton and Detective Reynolds. The record reflects that defendant filed, among others, a pre-trial motion to suppress identification.[7] The record does not reflect rulings on this or any other pretrial motions, but does reflect‘that these motions were resolved without objection from the defense. The minute entry of March 20, 2015 indicates that the defense informed the court that all motions were satisfied. And on the day of trial, May 28, 2015, both the State and the defense advised the court that all motions had been satisfied.
In Despite no indication of a ruling on defendant’s motion to suppress identification nor an objection from the defense, we will consider this identity argument. Compare State v. Lewis, 12-902 (La.App. 5 Cir. 06/27/13), 121 So.3d 128, 132 n. 1, writ denied, 13-1926 (La.04/17/14), 138 So.3d 618 (“[W]hen a *1214 defendant does not object to the trial court’s failure to rule on a motion prior to trial, the motion is considered waived.”); State v. Rodney, 96-116 (La.App. 5 Cir. 06/25/96), 676 So.2d 1103, 1105 (“A defendant who fails to object at trial to the admission of the identification evidence or testimony, and who fails to file a motion to suppress the identification, waives the right to assert the error on appeal.”). We do so because defendant does not assign as error the denial of the motion to suppress identification, but argues that the evidence was insufficient to establish that he was the driver of the Pontiac. Encompassed within proving the elements of an offense is the necessity of proving the identity of the defendant as the perpetrator. See State v. Nelson, 14-252 (La.App. 5 Cir. 03/11/15), 169 So.3d 493, 500. Indeed, under the standard of Jackson v. Virginia, supra, the State is required to negate any reasonable probability of misidentification in order to carry its burden of proof. See State v. Brady, 414 So.2d 364, 365 (La.1982).
In this case, defendant’s identity as the driver of the vehicle was sufficiently established by the testimonies of Detective Dalton and Detective Reynolds. Both officers testified that, though it was dark, their proximity to the Pontiac and the ambient lighting allowed them to clearly see the driver’s face in the Pontiac during the drug deal. After the driver and front passenger escaped apprehension, the officers, in the course of their investigative efforts to find them, sought to question the person whose name appeared on two traffic tickets located inside the Pontiac and dated four days prior to the date of the crime in question. When the officers came into contact with this person, they both immediately recognized him as the driver of the vehicle.
|1gAs the trier of fact, the district court was free to accept or reject, in whole or in part, the officers’ testimony. Bailey, supra. In returning a guilty verdict, the court evidently accepted their testimony. And since a positive identification by one witness is sufficient to support a conviction, the officers’ testimony was sufficient to convince a rational trier of fact beyond a reasonable doubt that defendant was the driver of the Pontiac on June 19, 2014. See State v. McClure, 14-253 (La.App. 5 Cir. 03/11/15), 169 So.3d 510, 521, writ denied, 15-684 (La.02/26/16), 187 So.3d 468.
As the driver, it is clear that defendant was not the primary actor in this narcotics transaction. That was Mr. Veal. It is clear, however, that defendant was involved in the commission of this offense. Whether defendant’s degree of involvement was sufficient to support his conviction as a principal to that offense is the issue before us. To settle that issue, we must first determine whether the evidence was sufficient to establish that the offense in fact occurred.
Co-defendant Torrian Veal was observed by two police officers conducting what appeared to be a hand-to-hand narcotics transaction in an area reputed for narcotics distribution. When confronted by the police with lights and sirens, the vehicle in which Mr. Veal was a passenger and which was being driven by defendant did not stop, but fled. During this flight, Mr. Veal was observed discarding from the vehicle plastic bags of a white rock-like substance that later tested positive for cocaine. After the vehicle stopped, Mr. Veal continued his escape on foot. It is well established that flight and attempt to avoid apprehension are circumstances from which the trier of fact may infer a guilty conscience. State v. Brown, 15-96 (La.App. 5 Cir. 09/15/15), 173 So.3d 1262, 1275. *1215 Mr. Veal was apprehended and was found to be in possession of crack cocaine, two cell phones, and 241 dollars. .Detective Dalton, who has specialized training in street level narcotics possession and distribution, testified that, in his experience, extra cell |13phones are often associated with narcotics activity. Crack cocaine was also recovered from the rear seat of the Pontiac where Mr. Veal had been sitting. In view of the foregoing, we have -little difficulty concluding that the evidence was sufficient to convince a rational trier of fact beyond a reasonable doubt that Mr. Veal was guilty of the offense of possession with intent to distribute cocaine.[8]
We now consider whether the evidence sufficiently established that defendant was a principal to that offense. Principals are “persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime[.]” La. R.S. 14:24. Principals are only those persons who knowingly participate in the planning or execution of a crime. State v. Hall, 03-906 (La.App. 5 Cir. 05/26/04), 875 So.2d 996, 1001. Thus, in order to be convicted as a principal to a crime, a defendant must have the requisite mental state for the crime. See id. Indeed, while a person’s mere presence at the scene of a crime does not make him a principal to the crime, a person is a principal who is at the scene of the crime ready to aid in its commission and is actually aware of his accomplice’s intentions. See id. The Louisiana Supreme Court has recognized that the law of principals applies to crimes of narcotics distribution.[9] See State v. Celestine, 95-1393 (La.01/26/96), 671 So.2d 896, 897. Thus, an intermediary who arranges or facilitates the transfer of narcotics from the seller to the buyer may be charged and punished as a principal in the act of distribution. Id.
For example, the Louisiana Fourth Circuit has upheld a defendant’s conviction of distribution of cocaine under the law of principals when the [14defendant was the driver of the vehicle from which a passenger sold crack cocaine to a confidential informant. See State v. Johnson, 01-1455 (La.App. 4 Cir. 05/29/02), 825 So.2d 1230, 1233. The court described the defendant’s role in the transaction as follows: “[The defendant] was present and drove the vehicle when [the passenger] initially solicited [the informant] to purchase drugs. [The defendant] was also present and facilitated the sale of crack cocaine by [the passenger] to [the informant], by positioning his vehicle in a more secluded location to avoid detection.” Id. See also State v. Furgerson, 34,344 (La.App. 2 Cir. 03/02/01), 781 So.2d 1268 (upholding the defendant’s conviction of possession of cocaine on the basis of evidence that the defendant was the driver of the car in which cocaine was transported, that his passenger transacted the drug deal, and that the driver ultimately decided whether the deal would happen or not).
Furthermore, it is well settled that the driver of a getaway vehicle is a *1216 principal to the crime committed. See Brown, supra, 173 So.3d at 1275-76 (armed robbery); State v. Falkins, 04-250 (La.App. 5 Cir. 07/27/04), 880 So.2d 903, 913, writs denied, 04-2220 (La.01/14/05), 889 So.2d 266 and 04-2171 (La.05/20/05), 902 So.2d 1045 (same); State v. Jackson, 99-1256 (La.App. 5 Cir. 07/25/00), 767 So.2d 848, 852, writ denied, 00-2528 (La.10/05/01), 798 So.2d 960 (same); State v. Witherspoon, 292 So.2d 499 (La.1974) (same).
Here, as the driver, defendant transported Mr. Veal and the crack cocaine to and from the narcotics transaction. Although defendant remained in the car during the drug deal, the evidence demonstrated that defendant was able to view the deal when he promptly responded to Mr. Veal’s hand signal to pick him up. Defendant then drove the getaway vehicle, fleeing from the police. These facts establish that defendant knowingly facilitated the transfer of narcotics and sought to avoid detection. Accordingly, we conclude that the evidence was sufficient to convince a rational trier of fact beyond a reasonable doubt that defendant was a principal to | ^the offense of possession with intent to distribute cocaine. This assignment of error is without merit.

Assignment of Error Two

In defendant’s second assignment of error, he argues that the district court erred in denying his motion to quash the multiple offender bill of information. In that motion, defendant argued that the alleged predicate offense was an unconstitutional guilty plea.[10] He specifically argued that his predicate guilty plea was unconstitutional because the district court collectively addressed multiple defendants at once during his Boykin[11] colloquy. The district court disagreed, determined that defendant had been properly Boykinized, adjudicated him a second felony offender, and sentenced him accordingly.[12] Defendant now seeks review of that ruling, which we will not disturb absent an abuse of discretion. See State v. Jones, 15-500 (La.App. 5 Cir. 12/23/15), 182 So.3d 1218, 1221 (holding that a trial court’s ruling on a motion to quash will not be disturbed absent an abuse of discretion).
The Louisiana Supreme Court in State v. Shelton, 621 So.2d 769, 779-80 (La.1993) set forth the framework for addressing a defendant’s challenge to a predicate guilty plea in a multiple offender proceeding:
If the defendant denies the allegations of the bill of information, the burden is on the State to-prove the existence of the prior guilty pleas and that defendant was represented by counsel when they were taken. If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State. The State will meet its burden of proof if it introduces a “perfect” transcript of the taking of the guilty plea, one which reflects a colloquy between judge and defendant wherein the defendant was informed of and specifically *1217 waived his right to trial by jury, his privilege against self-incrimination, and his right to confront his accusers. If the State | ^introduces anything less than a “perfect” transcript, for example, a guilty plea form, a minute entry, an “imperfect” transcript, or any combination thereof, the judge then must weigh the evidence submitted by the defendant and by the State to determine whether the State has met its burden of proving that defendant’s prior guilty plea was informed and voluntary, and made with an articulated waiver of the three Boy-kin rights.
In this case, defendant denied the allegations of the multiple bill when he filed his motion to quash challenging his predicate guilty plea. Therefore, the burden shifted to the State to prove the existence of the prior guilty plea and that defendant was represented by counsel when it was taken. The State met this burden when it introduced into evidence the transcript, the commitment, and defendant’s waiver of rights form of his predicate guilty plea. This evidence established that defendant was represented by counsel at the time of his plea. Consequently, the burden shifted back to defendant to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of his plea. In his effort to discharge this burden, defendant argued that his plea was unconstitutional because the district court collectively addressed multiple defendants at once during his Boykin colloquy.
With respect to group plea colloquies, this Court has recognized that “[wjhile a personal colloquy between the trial court and the defendant is preferred, group guilty pleas are not automatically invalid.” State v. Domino, 10-661 (La.App. 5 Cir. 01/25/11), 60 So.3d 659, 669. In Domino, this Court held that defendant had knowingly and expressly waived his Boykin rights when the evidence established that the court had at times addressed the defendants collectively, but. also addressed each defendant individually. See id.
In this case, the transcript of defendant’s predicate Boykin colloquy reflects that while the court initially addressed more than one defendant at once, the court thereafter engaged each defendant individually for their respective colloquies. During defendant’s colloquy, the court very clearly asked if defendant understood 117that by pleading guilty he was waiving his three Boykin rights: the right to trial by jury, the right against self-incrimination, and the right to confront his accusers. Defendant unambiguously responded to each advisal: “Yes, sir.” The court further advised defendant of other rights he was waiving by pleading guilty — e.g., the right to compulsory process, the right to appeal a guilty verdict, et al. — as well as other matters, such as his sentencing exposure, the sentence he would receive, and the potential for future sentence enhancements. Defendant indicated he understood and assented to each advisal. In the end, the court accepted defendant’s guilty plea as knowing and voluntary.
Based on this transcript, we find that defendant did not meet his burden of showing an infringement of his rights or a procedural irregularity in the taking of his plea. Therefore, the burden did not shift back to the State to prove the constitutionality of the plea. Yet, even if we were to find that defendant had shifted the burden back to the State, we would nonetheless find that the State met this burden by introducing a “perfect” transcript, clearly indicating that defendant knowingly and voluntarily pled guilty with an articulated waiver of his Boykin rights.
Upon review, we find that the district court did not abuse its discretion in declin *1218 ing to grant defendant’s motion to quash the multiple offender bill of information. This assignment of error is without merit.
ERRORS PATENT
The record was reviewed for errors patent, according to La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). Upon review, we find no errors patent requiring corrective action.
J^DECREE
For the foregoing reasons, defendant’s underlying conviction, his multiple offender adjudication, and his corresponding enhanced sentence are affirmed.

AFFIRMED

. This bill of information also charged co-defendant Torrian Veal with possession with intent to distribute cocaine (count one) and obstruction of justice (count two).

. Although the court did not specify, the latter fifteen years of defendant's sentence are deemed by operation of law to contain the restriction of benefits as provided in La. R.S. 15:529.1(G). See La. R.S. 15:301.1.

. Following his multiple offender adjudication and sentencing, defendant could no longer appeal his underlying sentence as it had been vacated before defendant’s enhanced sentence was imposed.

. Dismissing the appeal altogether does not appear to be a viable option since there is no legal basis to dismiss defendant’s timely appeal of his multiple offender adjudication and sentence.

. We note that Martinez has been abrogated, although on grounds not germane to this dis *1213 cussion. See United States v. Gavin, 394 Fed.Appx. 643, 645 (11th Cir.2010), cert. denied, 563 U.S. 927, 131 S.Ct. 1836, 179 L.Ed.2d 790 (2011); United States v. Moya, 74 F.3d 1117, 1120 (11th Cir.1996).

. We note that the admissibility of evidence of a defendant’s previous attempts to distribute a controlled dangerous substance may be subject to La. C.E, art. 404(B).

. Inexplicably, both the State and defense assert in their briefs to this Court that no motion to suppress identification was filed. The record clearly belies these assertions.

. On May 26, 2015, Torrian Veal pled guilty to possession with intent to distribute cocaine (count one) and obstruction of justice (count two) in 24th Judicial District Court No. 14-3337.

. While the offense of possession with intent to distribute a controlled dangerous substance is a specific intent crime, see Paul, supra; Elzie, supra, the offense of distribution of a controlled dangerous substance is a general intent crime, see State v. Brown, 05-102 (La.App. 5 Cir. 05/31/05), 904 So.2d 805, 808, writ denied, 06-1287 (01/26/07), 948 So.3d 159; State v. Banks, 307 So.2d 594, 596-97 (La.1975).

. The multiple bill alleged that defendant had previously pled guilty to the offense of possession of cocaine, a violation of La. R.S, 40:967(C), on October 21, 2010 in 24th Judicial District Court No. 10-2559.

. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

.Although the court did not expressly "deny” defendant's motion to quash, such denial is implicit in the court's finding that defendant had been properly Boykinized before adjudicating him a second felony offender.