STATE OF LOUISIANA

VERSUS

DARREN K. LLOYD

NO. 21-KA-645

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 20-3411, DIVISION "L"
HONORABLE DONALD A. ROWAN, JR., JUDGE PRESIDING

August 24, 2022

**MARC E. JOHNSON**
**JUDGE**

Panel composed of Judges Fredericka Homberg Wicker,
Marc E. Johnson, and John J. Molaison, Jr.

**AFFIRMED**
   **MEJ**
   **JJM**

**CONCURS WITH REASONS**
   **FHW**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISIANA
 Honorable Paul D. Connick, Jr.
 Thomas J. Butler
 Andrea F. Long
 Jennifer C. Voss
 Joshua K. Vanderhooft

COUNSEL FOR DEFENDANT/APPELLANT,
DARREN K. LLOYD
 Kevin V. Boshea

**JOHNSON, J.**

Defendant, Darren K. Lloyd, appeals his conviction for possession with intent to distribute cocaine less than 28 grams and habitual offender sentence from the 24th Judicial District Court, Division "L". For the following reasons, we affirm Defendant's conviction and sentence.

## FACTS AND PROCEDURAL HISTORY

On June 29, 2020, the Jefferson Parish District Attorney filed a bill of information charging Defendant with possession with intent to distribute cocaine weighing less than 28 grams in violation of La. R.S. 40:967(A). Defendant was arraigned on July 10, 2020, and pleaded not guilty.

The State and defense counsel filed several motions and notices. On May 19, 2021, the State filed a Notice of Expert Witness, wherein the State provided that it intended to call Sergeant Nicki Garnier as an expert. On May 24, 2021, defense counsel filed a motion *in limine* to exclude expert witness testimony from Sgt. Garnier. On May 25, 2021, the trial court denied Defendant's motion *in limine*, and counsel objected.

At trial, David Webster with the Jefferson Parish Sheriff's Office testified that on May 28, 2020, he arrested Defendant. He stated that on that day, he was assigned to the strategic engagement team, and they were conducting proactive patrols in the area of "Elm and Laurel," which he indicated as near the Shrine on Airline off of Airline Highway. Detective Webster described the area as a high-crime area that is "constantly plagued with some shooting incidents, narcotics distribution or homicides." He indicated that there were "roughly ten or twelve members" of his unit on proactive patrol and that he was patrolling alone.

Detective Webster stated that he responded to a 9-1-1 dispatch[1] on May 28th to a nearby location regarding "several males that had guns and were causing a disturbance in the area." He stated that once he arrived at the location, he turned on his "overhead lights and got out of [his] unit." He wore plain clothing with an outer ballistic vest marked "sheriff." The detective testified that he was walking towards the large group of people when he noticed Defendant was clutching his waistband. He provided that his attention was drawn to Defendant because he was the only person whose demeanor changed. Detective Webster stated that Defendant turned around and began to hastily walk away. He said Defendant was the only person that immediately moved towards "the cut which is a common area ... frequent to use to evade police." He indicated that as he called to Defendant, he noticed Defendant pick up his pace and begin sprinting.

Detective Webster testified that he chased Defendant and simultaneously called on his radio to have additional units "set up a perimeter so [they] can contain him and then eventually move the perimeter in." He stated that he was in constant communication with his other team members, and he maintained a constant visual of Defendant. He remained approximately 20 to 30 feet behind Defendant. Detective Webster stated that he effectively chased Defendant in a circle and apprehended him where they started because units blocked off various other routes. When asked when he figured out what Defendant was holding, Detective Webster

---

[1] Nancy Clary testified that she works for the Jefferson Parish Sheriff's Office where she processes requests for 9-1-1 recordings. She identified two documents generated on May 28, 2020, regarding this matter.

Additionally, she identified a 9-1-1 call that was played for the jury. In that call, a caller requested the police to 305 North Laurel Street. The female caller stated that there were "boys" there with guns outside of her window. She stated that she could not say how many but that there were a lot of them. She indicated that she could not describe them. She provided that her mother was downstairs and told her about them.

The 9-1-1 call corresponds to the Detailed History for Police Event #J201490612. While the audio recording contains indiscernible portions, the detailed history further reflects that the caller stated that the persons outside were threatening the people that lived at the home. It also contains a notation that the boys were walking away. A portion of the recording of the dispatch call and dialogue between the officers at the scene was played for the jury.

stated, "When we were running towards, back towards the original spot, as we looped back around, he ditches it on the side of a car. He threw it from his waistband." The detective stated that was the first time he saw Defendant swing both arms as he ran. He denied that there was anyone else in the area that could have dropped something there at that time.

Detective Webster provided that he picked up the dropped item and upon doing so he recognized the item to be narcotics. He then continued the foot pursuit. He described the collected narcotics as "a sandwich bag tied at the top containing fifty-eight individually packaged crack cocaine rocks." He stated that each rock of crack cocaine was packaged in the same manner as the larger bag. Defendant was apprehended shortly after the detective retrieved the item and complied with police orders. Detective Webster acknowledged that a search incident to arrest was conducted and Defendant had "two-hundred and forty dollars in tens and twenties" on his person. Defendant did not have any other drug paraphernalia. Defendant was arrested for "possession with intent of crack cocaine." In explanation of this particular charge, Detective Webster stated that, in his professional opinion and based on his experience, "fifty-eight individually bagged rocks that were contained individually along with the denominations of US currency that he had, tens and twenties, were consistent with street level narcotics distribution," and he believed Defendant was selling the narcotics. Detective Webster stated that the incident occurred during the daylight hours and acknowledged that the police report reflected that it was 7:20 p.m.

Michael Cole, a forensic chemist at the Jefferson Parish Sheriff's Office crime lab, was accepted as an expert in the examination and analysis of controlled dangerous substances. He indicated that he analyzed evidence in the instant case and created a report on his findings. Mr. Cole acknowledged that he only analyzed nine individually wrapped items in this case. He stated that the total gross weight

of the evidence was approximately 15 grams for all of the individual bags, and he tested a net weight of over two grams. Mr. Cole testified that he determined that the tested material contained cocaine, a controlled dangerous substance.

Sgt. Nicki Garnier with the narcotics division of the Jefferson Parish Sheriff's Office was recognized as an expert in "the field of packaging, distribution, sales and value" of illegal narcotics.[2] He acknowledged that he reviewed the crime lab report in this case. He noted that the evidence at issue was a large, clear, plastic bag containing 58 clear plastic bags holding an off-white rock-like substance which was consistent with crack cocaine. Sgt. Garnier provided that the size of the rocks in the individual bags looked like "they might be ten to twenty dollar rocks." He indicated that the tested weights noted in the crime lab report supported his assessment of the cost of the rocks. He testified that usually a narcotics distributor would package items like this to "easily be able to reach in, grab whatever is on his person, make a quick transaction; and then it will be over faster."

Sgt. Garnier stated that it was not typical for a user to carry that amount of cocaine on him and that each individual bag contained "one hit, one high" for a user. He noted that it is not typical for users to buy in bulk. Sgt. Garnier acknowledged that a lack of paraphernalia or smoking devices is consistent with someone who is distributing rather than using.

At the conclusion of the trial, the six-person jury unanimously found Defendant guilty as charged.

On June 23, 2021, defense counsel filed a Motion for New Trial. A habitual offender bill of information was filed that same date. The State alleged that on October 30, 2018, Defendant was sentenced on separate counts of obscenity in

---

[2] Defense counsel did not object to Sgt. Garnier being qualified as an expert but rather reiterated her "objection to his testimony, period."

violation of La. R.S. 14:106 to two years imprisonment at hard labor for each count (case numbers 18-3495 and 18-1416). The State further alleged that on that same day, Defendant was sentenced to two years imprisonment at hard labor for contraband in a correctional center in violation of La. R.S. 14:402 (case number 18-0047) and to two years imprisonment at hard labor for battery of a correctional facility employee in violation of La. R.S. 14:34.5 (case number 16-5226). Also, the State alleged that on that same date, Defendant was sentenced to 10 years imprisonment at hard labor for possession of a weapon by a convicted felon in violation of La. R.S. 14:95.1 (case number 16-0869). The State asserted that Defendant was previously sentenced on June 29, 2016, to five years imprisonment at hard labor for aggravated assault with a firearm in violation of La. R.S. 14:37.4 (case number 15-3055) and to five years imprisonment at hard labor for false representation of cocaine in violation of La. R.S. 40:971.1 (case number 15-2038).

On June 24, 2021, the trial court denied the motion for new trial. Immediately thereafter, the trial court sentenced Defendant to 10 years imprisonment at hard labor. Defendant then stipulated to being a habitual offender. Defendant executed a Waiver of Constitutional Rights – Plea of Guilty Multiple Offender form. The trial judge vacated the original sentence and imposed an enhanced sentence of 58 years imprisonment at hard labor without benefit of probation or suspension of sentence.

On June 25, 2021, Defendant filed a motion to reconsider sentence that appears to only address his enhanced sentence. On July 8, 2021, the trial court denied the motion to reconsider. On July 19, 2021, Defendant filed a Motion for Appeal, which the trial court granted that day. The instant appeal followed.

## ASSIGNMENTS OF ERROR

On appeal, Defendant alleges: 1) the possession with intent to distribute cocaine less than 28 grams guilty verdict is inconsistent with the evidence and law;

2) the trial court erred by denying the motion for new trial; 3) the trial court erred in imposing the 58-year sentence for possession with intent to distribute cocaine less than 28 grams; 4) the trial court erred in denying the motion to reconsider sentence; 5) the trial court erred in denying the motion *in limine* concerning expert testimony; and, 6) the trial court erred in permitting Sgt. Nicki Garnier to testify as an expert witness.

## LAW AND ANALYSIS

Sufficiency of the Evidence and Denial of Motion for New Trial[3]

Defendant alleges that there was insufficient evidence to prove either that he possessed cocaine or that he possessed cocaine with the intent to distribute it in violation of La. R.S. 40:967(A). Defendant argues that Sgt. Garnier testified as an expert at trial but that defense counsel objected to him testifying as an expert. Defendant asserts that the sergeant's opinion was based on the lack of paraphernalia or smoking devices but he testified that there are other ways to use crack cocaine. Defendant contends that there were no scales, cutting agents, or other paraphernalia seized and that there was no testimony that he was observed engaging in narcotics transactions or any other suspicious behavior. Defendant also argues that there was not a large amount of currency seized, and no weapons were found. He asserts that the State failed to negate beyond a reasonable doubt that the substance was for his personal use.

The State argues that the record demonstrates that the State proved beyond a reasonable doubt that Defendant violated La. R.S. 40:967(A). The State contends that the majority of Defendant's argument appears to allege that it failed to prove beyond a reasonable doubt that he possessed the crack cocaine with the intent to distribute it, as opposed to possessing it for personal use. As the State recounts the

---

[3] The arguments alleged in the two assignments of error are interrelated and will be jointly discussed.

trial testimony, it contends that the jury heard Detective Webster's testimony that he personally observed Defendant dispose of an object, which the detective immediately retrieved. The State provides that the retrieved item was a sandwich bag containing 58 individually packaged rocks that subsequently were determined by an expert forensic chemist to contain cocaine. The State asserts that based upon the amount of the drugs, Defendant's presence in an area known for narcotics distribution, his reaction to seeing law enforcement, the clutching of his waistband, and his flight, any rational fact-finder could have concluded that Defendant possessed the 58 crack rocks with the specific intent to distribute it.

The State asserts that Sgt. Garnier provided information that would have assisted the trier of fact in understanding the evidence and arriving at relevant factual determinations. The State contends that the expert testimony and the facts established at trial enabled the jury to recognize the significance of the amount of the drugs, the individual packaging of the crack rocks, the lack of drug paraphernalia on Defendant's person to smoke or inject the drug, and the denominations of cash found on Defendant. The State avers that any rational trier of fact could have found beyond a reasonable doubt that Defendant knowingly and intentionally possessed the crack cocaine and had the requisite specific intent to distribute the illegal substance.

The question of sufficiency of evidence is properly raised in the trial court by a motion for post-verdict judgment of acquittal under La. C.Cr.P. art. 821. *State v. Bazley*, 09-358 (La. App. 5 Cir. 1/11/11); 60 So.3d 7, 18, *writ denied*, 11-282 (La. 6/17/11); 63 So.3d 1039. Defendant did not file a motion for post-verdict judgment of acquittal, but rather, on June 23, 2021, Defendant filed a motion for new trial, arguing that the State was unable to meet its burden of proof.

Pursuant to La. C.Cr.P. art. 851, a motion for a new trial is based upon the supposition that an injustice has been done to the defendant, and unless such

injustice is shown, the new trial motion shall be denied no matter upon what allegations the motion is grounded. *State v. Paul*, 15-501 (La. App. 5 Cir. 1/27/16); 185 So.3d 188, 198. A trial judge's ruling on a motion for new trial will not be disturbed on appeal absent a clear showing of an abuse of discretion. *State v. Richoux*, 11-1112 (La. App. 5 Cir. 9/11/12); 101 So.3d 483, 490, *writ denied*, 12-2215 (La. 4/1/13); 110 So.3d 139. On motion of the defendant, the court shall grant a new trial whenever the verdict is contrary to the law and the evidence. La. C.Cr.P. art. 851(B)(1). When a motion for a new trial is based on the verdict being contrary to the law and the evidence, there is nothing for review on appeal. *State v. Condley*, 04-1349 (La. App. 5 Cir. 5/31/05); 904 So.2d 881, 888, *writ denied*, 05-1760 (La. 2/10/06); 924 So.2d 163. However, both the Louisiana Supreme Court and this Court have addressed the constitutional issue of the sufficiency of the evidence under this circumstance. *Id.*

The constitutional standard for testing the sufficiency of the evidence, enunciated in *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. *State v. Snavely*, 99-1223 (La. App. 5 Cir. 4/12/00); 759 So.2d 950, 958, *writ denied*, 00-1439 (La. 2/16/01); 785 So.2d 840.

The requirement that the evidence be viewed in the light most favorable to the prosecution requires the reviewing court to defer to "the actual trier of fact's rational credibility calls, evidence weighing and inference drawing." *State v. Caffrey*, 08-717 (La. App. 5 Cir. 5/12/09); 15 So.3d 198, 202, *writ denied*, 09-1305 (La. 2/5/10); 27 So.3d 297. The credibility of witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness; the credibility of the witnesses will not be reweighed on

appeal. *State v. Miller*, 20-182 (La. App. 5 Cir. 12/23/20); 308 So.3d 1246, 1256, *writ denied*, 21-233 (La. 4/27/21); 314 So.3d 838. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient to support a requisite factual finding. *Caffrey*, *supra*. "The reviewing court is not permitted 'to decide whether it believes the witness or whether the conviction is contrary to the weight of the evidence.'" *Id*. It is not the function of the appellate court to assess credibility or re-weigh the evidence. *State v. Smith*, 94-3116 (La. 10/16/95); 661 So.2d 442, 443; *State v. Chester*, 19-363 (La. App. 5 Cir. 2/3/21); 314 So.3d 914, 944, *writ denied*, 21-350 (La. 6/8/21); 317 So.3d 321.

Evidence may be either direct or circumstantial. Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact can be inferred according to reason and common experience. *State v. Williams*, 05-59 (La. App. 5 Cir. 5/31/05); 904 So.2d 830, 833. When circumstantial evidence is used to prove the commission of an offense, La. R.S. 15:438 provides that "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." *State v. Wooten*, 99-181 (La. App. 5 Cir. 6/1/99); 738 So.2d 672, 675, *writ denied*, 99-2057 (La. 1/14/00); 753 So.2d 208. This is not a separate test from the *Jackson* standard but rather provides a helpful basis for determining the existence of reasonable doubt. *Id*.

When circumstantial evidence forms the basis of a conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. *State v. Williams*, 99-223 (La. App. 5 Cir. 6/30/99); 742 So.2d 604, 608. To preserve the role of the fact-finder, *i.e.*, to accord the deference demanded by *Jackson*, the Louisiana Supreme Court has further subscribed to the general

principle in cases involving circumstantial evidence that when the fact-finder at trial reasonably rejects the hypothesis of innocence advanced by the defendant, "that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt." *State v. Captville*, 448 So.2d 676, 680 (La. 1984); *State v. Garrison*, 19-62 (La. App. 5 Cir. 4/23/20); 297 So.3d 190, 204, *writ denied*, 20-547 (La. 9/23/20); 301 So.3d 1190, *cert. denied*, --- U.S. ---, 141 S.Ct. 2864, 210 L.Ed.2d 967 (2021). A reasonable alternative hypothesis is not one "which could explain the events in an exculpatory fashion" but one that "is sufficiently reasonable that a rational juror could not 'have found proof of guilt beyond a reasonable doubt.'" *Captville, supra* (quoting *Jackson*, *supra*); *Garrison*, *supra*. A defendant's attempt to flee from police is viewed as evidence of guilty knowledge. *State v. Joseph*, 05-368 (La. App. 5 Cir. 1/17/06); 921 So.2d 1060, 1064.

In this case, Defendant was convicted of possession with intent to distribute cocaine in violation of La. R.S. 40:967(A). To prove the offense of possession with intent to distribute cocaine, in violation of La. R.S. 40:967(A), the State was required to show Defendant knowingly and intentionally possessed cocaine and that he did so with the specific intent to distribute it. *Id.*

Possession of a controlled dangerous substance can be established by actual physical possession or constructive possession, and the determination of whether sufficient possession exists to convict is dependent upon the facts of each case. *State v. Lane*, 20-137 (La. App. 5 Cir. 12/23/20); 309 So.3d 886, 902, *writ denied*, 21-100 (La. 4/27/21); 314 So.3d 836. Actual possession amounts to physical custody of the object. *State v. Williams*, 16-32 (La. App. 5 Cir. 8/24/16); 199 So.3d 1205, 1212. Constructive possession is when the object is not in the person's physical custody but is under his dominion and control such that he has the ability to reduce the object to actual possession. *Id.*

Specific intent is "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." Specific intent may be inferred from the circumstances of a transaction and from the actions of the accused. *State v. Faciane*, 17-224 (La. App. 5 Cir. 11/15/17); 233 So.3d 195, 206, *writ denied*, 17-2069 (La. 10/8/18); 253 So.3d 797. The intent to distribute may be established by proving circumstances surrounding the defendant's possession which gave rise to an inference of such intent. Such circumstances include (1) previous attempts to distribute; (2) whether the drugs are in a form consistent with distribution; (3) the amount of the drugs; (4) expert testimony indicating the amount of the drugs recovered is not consistent with personal use; and (5) paraphernalia evidencing an intent to distribute. *Id.* Specific intent is a legal conclusion to be resolved by the fact-finder. *State v. Martin*, 13-34 (La. App. 5 Cir. 6/27/13); 121 So.3d 170, 175, *writ denied*, 13-1744 (La. 2/7/14); 131 So.3d 861.

In *Martin*, 121 So.3d at 175-76, this Court found that a rational trier of fact could have found the evidence sufficient under the *Jackson* standard to show that the defendant possessed cocaine with the intent to distribute it. The State introduced evidence that showed the defendant possessed 6.15 grams of cocaine, which was divided and packaged into fourteen smaller quantities. Also, the State presented expert testimony that the division of the cocaine into smaller amounts was consistent with distribution and inconsistent with personal use. This Court noted that there was no testimony as to whether 6.15 grams of cocaine was a quantity consistent with distribution or personal use. Other than the individual packaging, no money, weapons, or any other items associated with distribution were discovered on the defendant or in his vehicle. However, neither was paraphernalia indicative of personal use discovered in the defendant's possession. The defendant was alone in a vehicle at the time of his arrest and claimed in his

statement that the cocaine was for his personal use. This Court indicated that the defendant's intent to distribute could be inferred from the individual packaging of the cocaine, the lack of personal paraphernalia, and the fact that the cocaine was discovered in the possession of one person.

In *State v. Wade*, 36,295 (La. App. 2 Cir. 10/23/02); 832 So.2d 977, 983, *writ denied*, 02-2875 (La. 4/4/03), 840 So.2d 1213, the second circuit found that the evidence was sufficient to support a finding of intent to distribute cocaine even though no money, weapon, cellular telephone, pager, or crack pipe was found on the defendant's person at the time of his arrest. The defendant, upon his arrest, was carrying seven individually wrapped rocks of crack cocaine in his front pocket. The State's expert witness testified that the total weight of cocaine discovered on the defendant's person, 9.2 grams, was not a "personal use amount" and explained that each hundred-dollar rock would likely have been divided into "dime bags." *Id*.

In *State v. Vanburen*, 08-824 (La. App. 4 Cir. 12/30/08); 3 So.3d 552, 556, *writ denied*, 09-206 (La. 10/30/09); 21 So.3d 273, two officers testified that they witnessed the defendant reach into his pocket and discard an object. Subsequent testing by the State confirmed that the discarded object was cocaine. The appellate court stated that this evidence indicated that the defendant knowingly possessed the contraband and then discarded it.[4]

Here, we find that a rational trier of fact could have found that the evidence was sufficient under the *Jackson* standard to show that Defendant possessed the cocaine with the intent to distribute it.

---

[4] *See also State v. Johnson*, 99-1053 (La. App. 4 Cir. 6/14/00); 766 So.2d 572, 577. In *Johnson*, one officer testified that he witnessed the defendant receive money from two subjects in exchange for the contraband, that the cocaine was packaged in a manner evidencing an intent to distribute, and that the amount of the cocaine was inconsistent with personal use only. Two officers stated that they witnessed the defendant throw the bag of contraband over a fence as he attempted to elude the officers. Additionally, a lab report introduced into evidence indicated that several pieces of a "rock-like" substance tested positive for cocaine. The appellate court found that evidence to be sufficient.

Detective Webster testified that he maintained a constant visual of Defendant as he chased him and that he remained approximately 20 to 30 feet behind Defendant. He testified that he saw Defendant throw something from his waistband toward the side of a car. He denied that there was anyone else in the area that could have dropped something there at that time.

Detective Webster testified that he picked up the discarded item and immediately recognized it to contain narcotics. He described the collected narcotics as "a sandwich bag tied at the top containing fifty-eight individually packaged crack cocaine rocks." He stated that each rock of crack cocaine was packaged in the same manner as the larger bag. At the time of his arrest, Defendant had "two-hundred and forty dollars in tens and twenties" on his person. Defendant did not have any drug paraphernalia. Detective Webster stated that, in his professional opinion and based on his experience, "fifty-eight individually bagged rocks that were contained individually along with the denominations of US currency that he had, tens and twenties, were consistent with street level narcotics distribution."

Additionally, Mr. Cole, the forensic chemist testified that the total gross weight of the evidence was approximately 15 grams for all of the individual bags and that he tested a net weight of over two grams. Mr. Cole testified that he determined the tested material contained cocaine.

Sgt. Garnier was recognized as an expert and stated that the evidence at issue was a large, clear, plastic bag containing 58 clear plastic bags holding an off-white rock-like substance which was consistent with crack cocaine. Sgt. Garnier provided that the size of the rocks in the individual bags looked like "they might be ten to twenty dollar rocks." He indicated that the tested weights noted in the crime lab report supported his assessment of the cost of the rocks. He further testified that usually a narcotics distributor would package items like this to make

transactions faster. Sgt. Garnier stated that it was not typical for a user to carry that amount of cocaine on his person and that each individual bag contained "one hit, one high" for a user. He pointed out that it is not typical for users to buy in bulk. Sgt. Garnier acknowledged that a lack of paraphernalia or smoking devices is consistent with someone that is distributing rather than using.

The jury reviewed all the evidence, heard all the testimony, and evidently believed the testimony, concluding that Defendant possessed and intended to distribute the cocaine. Possession may be inferred from the fact that an officer saw Defendant discard the cocaine while he maintained a constant visual of Defendant, and no one else was around. As in *Martin*, Defendant's intent to distribute may be inferred from the individual packaging of the cocaine and the lack of personal paraphernalia.[5] Further, the evidence at trial showed that the monetary denominations found on Defendant at the time of his arrest were consistent with Sergeant Garnier's estimated worth of the individual bags.[6] The jury believed the officer's and expert's testimony and that Defendant possessed the cocaine with the intent to distribute it. We find that there was sufficient evidence to convict Defendant of the charged offense. Additionally, we find that the trial court did not err in denying Defendant's motion for new trial.

---

[5] In *Snavely*, *supra*, the court noted that there was no personal paraphernalia found and that a sergeant testified that the fact the defendant did not have a crack pipe on his person indicated that he was not a crack user. This Court found that the defendant's conviction for possession with intent to distribute cocaine was constitutionally sufficient under the *Jackson* standard.

[6] While Defendant focuses on possession and intent, the quantity of the narcotics was also sufficiently established, even though all of the individual bags were not tested. In *State v. Ballom*, 562 So.2d 1073 (La. App. 4th Cir. 1990), *writ denied*, 575 So.2d 386 (La. 1991), the fourth circuit noted that random testing of controlled substances "is the accepted customary practice" and that it is both reasonable and reliable. In *Ballom*, the analyst had randomly tested the contents of 4 out of 1,095 bags of the white powdery substance recovered. Each of the bags tested was found to contain pure cocaine, and there was no evidence that the other packages were not fungible. Accordingly, the court concluded that a rational juror could have found the defendant was in possession of 260 grams of cocaine. *See State v. Smith*, 17-553 (La. App. 4 Cir. 12/13/17); 316 So.3d 1011, *writ denied*, 18-115 (La. 10/29/18); 254 So.3d 701. There, the defendant argued that by only testing one of the pieces of cocaine, the State failed to prove the crime of possession with the intent to distribute, proof of which rested in part on the large quantity of cocaine discovered. The defendant suggested that the State's proof that only one of the pieces was actually cocaine was insufficient to prove that he possessed cocaine with the intent to distribute and not simply for personal use. The fourth circuit found that the evidence was sufficient for a rational trier of fact to conclude that the quantity of cocaine possessed by the defendant was consistent with the intent to distribute.

<u>Imposition of Sentence and Denial of Motion to Reconsider Sentence</u>[7]

Defendant challenges his 58-year sentence and the trial court's ruling on the motion to reconsider sentence. Defendant argues that only one of his prior convictions is classified as a crime of violence. Defendant further states that the offenses in the habitual offender bill stem from three time periods across 2015, 2016, and 2018. Defendant avers that viewed in a light most favorable to the prosecution, Defendant threw down a bag containing two grams of cocaine. Defendant argues that there was no evidence at trial that he sold or attempted to sell any controlled dangerous substance or that he fought or struggled with the police upon his arrest. Defendant avers that there is no indication of any violence, drug trafficking, or drug consumption. He states that the offense did not occur in a school zone or any other protected area. Defendant contends that his criminal history does not place him in the category of worst possible offender, and his conduct is not as severe as others similarly situated. He asserts that a 58-year term of imprisonment is essentially a life sentence for him. Defendant concludes that the sentence is overly harsh and excessive. He also asserts that the motion to reconsider sentence should have been granted.

The State contends that the record reveals that the trial court did not abuse its broad sentencing discretion. The State asserts that a comparison of sentences imposed for similar crimes is complicated by the changes to the penalty provisions in recent years as to both La. R.S. 40:967(A) and La. R.S. 15:529.1. The State asserts that consideration of the nature of the crime and the nature and background of Defendant demonstrates that the trial court did not abuse its broad sentencing discretion relative to the term imposed. The State avers that Defendant was 25

---

[7] The arguments alleged in the two assignments of error are interrelated and will be jointly discussed.

years old at the time of the offense,[8] and he possessed 58 rocks of crack cocaine with the specific intent to distribute the drugs. The State discusses the dangers of crack cocaine and the dangers associated with drug-related crimes. The State asserts that Defendant's disregard for the law in this matter was not an aberrational event and notes that he admitted to being a quadruple offender. The State points out that the habitual offender bill reflects seven prior felony convictions. The State argues that one of the prior convictions (aggravated assault with a firearm) was a crime of violence, while another offense (battery upon a correctional facility employee) may have constituted a crime of violence. The State further contends that two of the prior convictions involved the possession of a firearm by Defendant. The State posits that confinement has not proven to be a deterrent to Defendant's criminal behavior as at least two of his crimes occurred in a jail or prison setting. The State concludes that the record supports the sentence imposed.

Prior to the imposition of the original sentence, the trial court stated that it considered all of the factors in La. C.Cr.P. art. 894.1, "including, a) when a Defendant has been convicted of a felony, the Court should impose a sentence of imprisonment, if any the following factors exist: 1) There is an undue risk that during the period of a suspended sentence or probation the Defendant will commit another crime, 2) The Defendant is need of a correctional treatment of a custodial environment that can be provided most effectively by his commitment to an institution, and any lesser sentence would deprecate the seriousness of this offense." The judge stated that he reviewed his notes from the trial and found the evidence to be overwhelming. The judge then sentenced Defendant to 10 years imprisonment at hard labor. That same day, the trial court accepted defendant's stipulation to being a quadruple offender. The trial judge vacated the original

_____

[8] It is noted that in Defendant's brief, he asserts that he was 24 years old. The sentencing minute entry reflects that Defendant reported his birthdate as August 12, 1996, and his age as 24 years old.

sentence of 10 years at hard labor and imposed an enhanced sentence of 58 years imprisonment at hard labor without benefit of probation or suspension of sentence.

Defense counsel filed a timely motion to reconsider sentence under La. C.Cr.P. art. 881.1. In that motion, defense counsel asserted that the enhanced sentence was excessive and improper. Counsel argued that the sentence of 58 years is excessive considering the underlying facts upon which he was convicted; specifically, that Defendant was found guilty of intending to distribute 58 individually wrapped crack rocks. Counsel stated that one of the reasons cited by the trial court in rendering Defendant's sentence was that he should serve one year for each bag of crack cocaine. The defense contended that 58 years is excessive and should be decreased to a term of imprisonment that more accurately reflects the underlying facts and the charge.

A hearing on the motion to reconsider was held on July 8, 2021. No oral arguments were presented at the hearing. The trial judge stated that, on June 23, 2021, the court provided reasons for the sentence imposed. The judge also said that he did not find any reasons to reconsider the sentence. He stated, "What I will object to is that I never said that I was sentence [sic] him to – Multiple Bill him to one year per rock." The judge noted that he never insinuated that, and he objected to that assertion in the motion. As such, the court denied the motion to reconsider sentence.

The Eighth Amendment to the U.S. Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. *State v. Calloway*, 19-335 (La. App. 5 Cir. 12/30/19); 286 So.3d 1275, 1279, *writ denied*, 20-266 (La. 7/24/20); 299 So.3d 69. A sentence is considered excessive, even if it is within the statutory limits, if it is grossly disproportionate to the severity of the offense or imposes needless and purposeless pain and suffering. *State v. Alvarez*, 08-558 (La. App. 5 Cir. 8/31/10); 47 So.3d 1018, 1022.

According to La. C.Cr.P. art. 881.4(D), the appellate court shall not set aside a sentence for excessiveness if the record supports the sentence imposed. In reviewing a sentence for excessiveness, the reviewing court shall consider the crime and the punishment in light of the harm to society and gauge whether the penalty is so disproportionate as to shock the court's sense of justice, while recognizing the trial court's wide discretion. *Calloway*, *supra*; *State v. Taylor*, 06-839 (La. App. 5 Cir. 3/13/07); 956 So.2d 25, 27 (citing *State v. Lobato*, 603 So.2d 739, 751 (La. 1992)). A relevant question on appeal is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Girod*, 16-74 (La. App. 5 Cir. 6/30/16); 195 So.3d 1274, 1279, *writ denied*, 16-1547 (La. 5/26/17); 221 So.3d 80.

In reviewing a trial court's sentencing discretion, three factors are considered: 1) the nature of the crime; 2) the nature and background of the offender; and 3) the sentence imposed for similar crimes by the same court and other courts. *Alvarez*, 47 So.3d at 1022. However, there is no requirement that specific matters be given any particular weight at sentencing. *State v. Woods*, 20-73 (La. App. 5 Cir. 9/9/20); 303 So.3d 403, 407, *writ denied*, 21-27 (La. 2/17/21); 310 So.3d 1150.

The penalty for possession with intent to distribute cocaine weighing less than 28 grams is imprisonment, with or without hard labor, for not less than one year nor more than 10 years, and in addition, a fine of not more than $50,000 may be imposed. Defendant was originally sentenced to 10 years imprisonment at hard labor. The State filed a habitual offender bill that alleged that Defendant was convicted of two separate counts of obscenity, contraband in a correctional center, battery of a correctional facility employee, possession of a weapon by a convicted felon, aggravated assault with a firearm, and false representation of cocaine. Defendant stipulated to being a quadruple-felony offender. The original sentence

was vacated, and Defendant was subsequently sentenced as a quadruple-felony offender to 58 years imprisonment at hard labor without benefit of probation or suspension of sentence.

If the fourth or subsequent felony is such that, upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the offender shall be sentenced to a determinate term not less than the longest prescribed for a first conviction but in no event less than 20 years and not more than his natural life. *See* La. R.S. 15:529.1(A)(4). As such, Defendant here faced an enhanced sentence of 20 years imprisonment to life imprisonment at hard labor without the benefit of probation or suspension of sentence.[9]

As previously stated, the record indicates that Defendant stipulated to his status as a habitual offender after being advised he would be sentenced to 58 years imprisonment if the trial court accepted his plea. Under La. C.Cr.P. art. 881.2(A)(2), a defendant "cannot appeal or seek review of a sentence imposed in conformity with a plea agreement which was set forth in the record at the time of the plea." This Court has consistently recognized that La. C.Cr.P. art. 881.2(A)(2) precludes a defendant from seeking review of an enhanced sentence to which the defendant agreed prior to pleading guilty. *State v. Reynard*, 17-375 (La. App. 5 Cir. 12/13/17); 234 So.3d 238, 241; *State v. Goodwin*, 05-51 (La. App. 5 Cir. 6/28/05); 908 So.2d 56, 58.

The record reflects that Defendant agreed to stipulate to his status as a quadruple-felony offender in exchange for the 58-year sentence he received. The Waiver of Rights form executed by Defendant indicates that he was advised and understood that he would receive a 58-year sentence in exchange for admitting his status as a quadruple-felony offender. During the plea colloquy, the trial judge

---

[9] It is noted that La. R.S. 15:529.1(A)(4) also provides for other sentencing for a fourth-felony offender, but those provisions are not applicable here.

advised Defendant that if he accepted the guilty plea, he would be sentenced to "fifty-eight years at hard labor, department of corrections, without benefit of probation or suspension of sentence." Defendant indicated he understood his sentence. Defendant was subsequently sentenced to 58 years imprisonment at hard labor without the benefit of probation or suspension of sentence. Because Defendant received the same sentence, which was "imposed in conformity with a plea agreement which was set forth in the record at the time of the plea," we find that he is barred from challenging the excessiveness of his habitual offender sentence on appeal. La. C.Cr.P. art. 881.2(A)(2). *See Goodwin*, 908 So.2d 56.[10]

Denial of Motion *In Limine* and Expert Witness

Defendant notes that a motion *in limine* to exclude Sgt. Garnier's testimony was filed prior to trial. He argues that the trial court erred in permitting Sgt. Garnier to testify that, in his opinion, Defendant was involved in the distribution, attempted distribution, or intended distribution of cocaine. Defendant avers that the testimony was tantamount to an opinion that he was guilty. He contends that it was an indirect, abstract inference as to the ultimate issue in the case. Defendant alleges that Sgt. Garnier's testimony did not aid the jury in its fact-finding process. He argues that, while the witness discussed that crack cocaine is normally smoked, Sgt. Garnier specifically stated that there are other ways to use it. Defendant contends that if that is true, then the fact that he was not found with a pipe in his possession is irrelevant as to the question of his intent to distribute. He concludes

---

[10] In *State v. Shelton*, 09-2071 (La. 1/29/10); 26 So.3d 745, 746, the supreme court states:

> *See State v. Bush,* 39,150, p. 2 (La.App. 2nd Cir.7/8/04), 875 So.2d 134, 135 (La.C.Cr.P. art. 881.2(A)(2), which precludes a defendant from appealing or seeking review of a sentence agreed as part of a plea bargain, also precludes a trial court from granting a motion to reconsider sentence; any other rule "would mean that any defendant could plead guilty with an agreed sentence but still subject it to judicial review by the imposing court ... eviscerat[ing] the efficacy of plea negotiations involving agreed sentences and ... remov[ing] the district attorney's power to obtain final resolutions of cases as provided by La.C.Cr.P. art. 61."), *writ denied* 04–2052 (La.11/7/05), 891 So.2d 668.

that the motion *in limine* should have been granted.

The State avers that Defendant's contention that Sgt. Garnier's testimony did not aid the jury in the case is incorrect. The State alleges that the sergeant testified that crack cocaine could not be used without either a crack pipe or needle. The State argues that this testimony aided the fact-finder at trial. The State contends that Defendant fails to consider that the jurisprudence demonstrates that an absence of paraphernalia to smoke or inject crack cocaine is a relevant factor for consideration by a jury.

The State next provides that Defendant did not preserve for review the argument that the sergeant's testimony was tantamount to an opinion that Defendant was guilty of the crime charged. The State notes that Defendant's pre-trial Motion *in limine* to Exclude Expert Witness Testimony only indicated that the potential testimony ran the risk of unintentionally rendering an opinion that Defendant was guilty of distribution wherein the risk of prejudice and of reversible error consequently increases and that the introduction of his testimony would run the risk of blurring the lines between his expertise and his opinion as to Defendant's guilt or innocence. The State argues that during *voir dire* of the expert at trial, the defense did not object to any specific testimony offered by the expert witness. The State acknowledges that the requirements of La. C.Cr.P. art. 841(A) are generally inapplicable to a court's ruling on a written motion. The State argues, however, that seeking to exclude an expert witness from testifying based upon a generic argument of a potential risk of error does not suffice for notice purposes. The State avers that due to the lack of contemporaneous objection, neither the trial court nor the State were placed on notice that Defendant found particular testimony to be objectionable, the trial judge was not given an opportunity to rule upon and potentially address the alleged error, and Defendant had the opportunity to gamble upon a favorable verdict as a result. The State

asserts that this claim should therefore be deemed waived.

The State contends that if it is not found waived, Defendant is still not entitled to relief. The State argues that Sgt. Garnier's testimony did not express an opinion as to the guilt or innocence of Defendant nor was such an opinion solicited through the presentation of a hypothetical situation. The State alleges that the expert testimony did not run afoul of La. C.E. art. 704. The State avers that the testimony provided a general opinion as to whether the absence of drug paraphernalia might be consistent with someone who was distributing and provided background information on how crack cocaine is used. The State argues that the opinion testimony provided relevant information that aided the jurors and did not usurp the function of the jury as the ultimate fact-finder. Additionally, the State submits that even if the trial court erred in admitting the expert testimony, any error here would be harmless as the State introduced substantial evidence of Defendant's guilt.

On May 19, 2021, the State filed a Notice of Expert Witness wherein it provided that it intended to call Sgt. Garnier as an expert in the field of illicit narcotics, packaging, quantity, value, and distribution. The State asserted that the expert witness would show that the quantity and packaging of the crack cocaine seized as well as the amount of currency located on Defendant's person are indicative of the intent to distribute street-level narcotics.

On May 24, 2021, defense counsel filed a motion *in limine* to exclude Sgt. Garnier's expert testimony. Counsel noted that she took no exception to Sgt. Ganier's experience or expertise but instead objected that expert testimony is unnecessary and without value in assisting the jury in determining Defendant's guilt or innocence. Counsel contended that the only potential assistance Sgt. Garnier could provide the jury in its fact-finding mission would be to enlighten the jury on the cost of purchasing controlled dangerous substances, which counsel

asserted is not important here.  Defense counsel argued that the potential testimony runs the risk of unintentionally rendering an opinion that Defendant was guilty of distribution, wherein the risk of prejudice and hence of reversible error consequently increases.  Counsel contended that the testimony lacks value, undermines the jury, and runs the risk of opinion testimony that would constitute reversible error.

On May 25, 2021, prior to the start of trial, a hearing was held on the motion *in limine*.  Defense counsel stated that she objected to the testimony "based on the fact that the purpose of an expert is to educate the jury on matters beyond their understanding."  She noted that the allegations against Defendant are that he had 58 individual packages of crack cocaine that he discarded before he was apprehended and that he had $240 in his pocket.  Counsel stated that there were no cell phone calls with jargon beyond the jury's understanding or any evidence of "confusing get-togethers in order to distribute the drugs."  Defense counsel stated that any expert testimony would have no value and would contain irrelevant information.  She noted that there was also the potential that the testimony would prejudice Defendant and confuse the issues.

In response, the State informed the court that it intended to qualify Sgt. Garnier as an expert in illicit narcotics packaging, quantity, value, and distribution. The State provided that the purpose of calling a "PWIT expert" was because a layperson would not necessarily know the dosage unit of crack cocaine.  The State contended that it was very important in this case for the jury to know how much crack cocaine is used in a single dose.  The State further averred that the value of the individual bags was important here because Defendant had cash in his possession.  The State pointed out that Defendant did not have paraphernalia in his possession.

Defense counsel then quoted from *State v. Wheeler*, 446 So.2d 1215 (La.

1984).  She asserted that the matter is not beyond the jury's understanding. Counsel stated that if a person is trying to insinuate that a person stole a car, it is not necessary to know how much the car is worth.  Counsel argued that the jury is capable of understanding if Defendant had drugs in his possession and if he intended to distribute them.

The trial judge compared this to the display of track marks on arms in "California versus Schmerber."  The judge stated that a jury knows what a track mark is, but they do not know the age of it.  The judge stated that it was similar to this issue in that there will be a witness who will testify to knowledge that the jury does not have.  The judge provided that "you would like to think that they know. They know what crack cocaine is, they know packaging, but they don't know the purpose of the dosage, they don't know the purpose of the wrap, they don't know the amount of money, what it costs."  The judge stated that this information will assist the trier of fact and that the expert "is not going into the ultimate purview of their jobs."  The judge asserted that the expert testimony had probative value that outweighed any prejudicial effect.  As such, the judge denied the motion *in limine* and noted defense counsel's objection.  At trial, after the sergeant testified as to his experience and qualifications, defense counsel stated, "I'm not going to object to his being qualified as an expert.  I just want to reiterate my objection to his testimony, period, as we argued before, just for record purposes."

La. C.Cr.P. art. 841(A) states that an irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence.  It provides that it is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take, or of his objections to the action of the court, and the grounds therefor.  La. C.Cr.P. art. 841(B) states that the requirement of an objection shall not apply to the court's ruling on any written motion.  Comment B to La. C.Cr.P. art. 841 states that the

general rule, stated in the second paragraph, is that no objection is required when a written motion has been filed. The written motion serves to put the court and the other party on notice.

Here, Defendant filed a written motion *in limine* to exclude Sgt. Garnier's expert testimony. There, he argued in part that the potential testimony ran the risk of unintentionally rendering an opinion that Defendant was guilty of distribution, wherein the risk of prejudice and hence of reversible error consequently increases. On appeal, Defendant also argues the sergeant improperly testified as to his opinion that Defendant was involved in the distribution or attempted distribution of cocaine, which Defendant argues is tantamount to an opinion that he was guilty of the crime charged. Defendant also alleges in both the motion *in limine* and his appellate brief that the testimony did not aid the jury in its fact-finding process. When the trial judge denied the written motion, he acknowledged defense counsel's objection to the ruling. Additionally, prior to Sgt. Garnier being accepted as a witness at trial, defense counsel stated, "Judge, I'm not going to object to his being qualified as an expert. I just want to reiterate my objection to his testimony, period, as we already argued before, just for record purposes." The judge responded that he would "let it remain outstanding." As such, we find that the issue was properly preserved for review.

The purpose of an expert witness in a criminal case is to provide the jurors with a basis of knowledge and background information on a subject. *State v. Myles*, 04-434 (La. App. 5 Cir. 10/12/04); 887 So.2d 118, 125. The jury as the ultimate fact-finder should relate background knowledge received from the expert to the facts established by the evidence at trial and make a determination of the defendant's guilt. *State v. Dobbins*, 05-342 (La. App. 5 Cir. 12/27/05); 920 So.2d 278, 286.

The admissibility of expert testimony is governed by La. C.E. art. 702 which states if "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." *State v. Bozeman*, 06-679 (La. App. 5 Cir. 1/30/07); 951 So.2d 1171, 1174.

La. C.E. art. 704 provides that "in a criminal case, an expert witness shall not express an opinion as to the guilt or innocence of the accused." This prohibition applies even if the opinion is solicited through the presentation of a hypothetical situation. *Lane*, 309 So.3d at 907. The trial court is vested with much discretion in determining which opinion testimony shall be received into evidence as lay or expert testimony. *State v. Nelson*, 14-252 (La. App. 5 Cir. 3/11/15); 169 So.3d 493, 507, *writ denied*, 15-685 (La. 2/26/16); 187 So.3d 468.

To establish Defendant's guilt in the instant case, the State was required to prove beyond a reasonable doubt that Defendant knowingly and intentionally possessed the crack cocaine with the specific intent to distribute it. One method by which the State commonly seeks to prove intent to distribute is by producing expert testimony or other evidence to show that the amount of the drug found in the defendant's possession is inconsistent with personal use. *State v. Johnson*, 10-209 (La. App. 5 Cir. 10/12/10); 52 So.3d 110, 121, *writ denied*, 10-2546 (La. 4/1/11); 60 So.3d 1248. This Court has held that a police officer does not need scientific credentials or a scientific method in order to testify as an expert on the difference between sellers and users in narcotics cases. *State v. White*, 14-631 (La. App. 5 Cir. 12/23/14); 168 So.3d 664, 667.

In *State v. Hollins*, 99-278 (La. App. 5 Cir. 8/31/99); 742 So.2d 671, *writ denied*, 99-2853 (La. 1/5/01); 778 So.2d 587, the defendant was convicted of possession of cocaine with intent to distribute and argued on appeal that the trial

court improperly allowed expert opinion testimony regarding the ultimate issue of guilt in contravention of La. C.E. art. 704. There, Lieutenant Miller was qualified as an expert in the field of narcotics investigations. He testified that in his experience, 19 rocks of crack cocaine would be consistent with wholesale use. The defendant argued that the trial court erred in allowing this testimony because the testimony constituted an opinion on the defendant's guilt. This Court found that the expert did not give an impermissible opinion of guilt and that the evidence was admissible.

In the instant case, in order to meet its burden of proof, the State offered Sgt. Garnier as an expert in the distribution, packaging, sales, and value of illegal narcotics. Sgt. Garnier provided that the size of the rocks in the individual bags looked like "they might be ten to twenty dollar rocks." He indicated that the tested weights noted in the crime lab report supported his assessment of the cost of the rocks. He testified that usually a narcotics distributor would package items like this to easily make quick transactions. Sgt. Garnier stated that it was not typical for a user to carry that amount of cocaine on him and that each individual bag contained "one hit, one high" for a user. He noted that it was not typical for users to buy in bulk. Sgt. Garnier acknowledged that a lack of paraphernalia or smoking devices is consistent with someone that is distributing rather than using.

We find that the trial court did not err in finding Sgt. Garnier's expert testimony permissible. We note that much of his testimony went to proving that the amount of cocaine found in Defendant's possession was inconsistent with personal use, which is a permissible use of expert testimony. Additionally, we find that the testimony provided the jury with a basis of knowledge and background information. As such, we conclude that the court did not err in denying the motion *in limine*, or in permitting the expert testimony.

Errors Patent Discussion

The record was reviewed for errors patent, according to La. C.Cr.P. art. 920; *State v. Oliveaux*, 312 So.2d 337 (La. 1975); and *State v. Weiland*, 556 So.2d 175 (La. App. 5th Cir. 1990). We found no errors that require corrective action.

**DECREE**

For the foregoing reasons, Defendant's conviction and sentence are affirmed.

<u>**AFFIRMED**</u>

STATE OF LOUISIANA

VERSUS

DARREN K. LLOYD

NO. 21-KA-645

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

## WICKER, J., CONCURS WITH REASONS

I agree with the majority opinion affirming defendant's conviction for possession with intent to distribute cocaine in violation of La. R.S. 40:967(A) and adjudication as a fourth felony offender under La. R.S. 15:529.1. Further, because defendant stipulated to the multiple offender bill and knowingly and voluntarily entered into an agreement to receive a 58-year sentence, I concur in the majority's finding that defendant waived his right to challenge the harshness of his enhanced sentence on appeal. Thus, I concur in the finding that, that under the facts of this case, defendant's 58-year enhanced sentence should be affirmed.

I write separately however to point out that defendant's 58-year sentence, agreed upon by the state, results in defendant's release at the approximate age of 82. This effective life sentence imposes an undue burden on the taxpayers of the state who must feed, house, and clothe this defendant for life. Under Louisiana law, prison authorities owe a duty to provide inmates with reasonable medical care. *Thomas v. Louisiana Dep't of Pub. Safety & Corr.*, 20-0833 (La. App. 1 Cir. 2/22/21), *writ denied*, 21-00456 (La. 6/8/21), 317 So.3d 327; *Robinson v. Stalder,* 98-0558 (La. App. 1 Cir. 4/1/99), 734 So.2d 810, 812; *Hollyfield v. Hurst,* 796 Fed. Appx. 817, 821 (5th Cir. 2019). As this defendant ages, these costs will only increase due to the need for geriatric health treatments. See *State v. Bruce*, 11-991 (La. App. 5 Cir. 10/30/12), 102 So.3d 1029, 1036, *writ denied,* 12-2568 (La. 4/26/13), 112 So.3d 839; *State v. Hayes,* 97–1526 (La. App. 1 Cir.

21-KA-645                                        29

6/25/99), 739 So.2d 301, 303, *writ denied,* 99–2136 (La. 6/16/00), 764 So.2d 955, and *State v. Burns,* 97–1553 (La. App. 4 Cir. 11/10/98), 723 So.2d 1013, 1020, *writ denied,* 98–3054 (La. 4/1/99), 741 So.2d 1282.

Therefore, while I concur in outcome in this case, I write separately to address a concern that the continued policy of state negotiations for terms of imprisonment that extend beyond the age at which the rate of recidivism drastically decreases, is an irresponsible use of state public funds as a matter of public policy.

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
INTERIM CHIEF DEPUTY CLERK

.
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **AUGUST 24, 2022** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 21-KA-645

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE DONALD A. ROWAN, JR. (DISTRICT JUDGE)
ANDREA F. LONG (APPELLEE)          THOMAS J. BUTLER (APPELLEE)          KEVIN V. BOSHEA (APPELLANT)
LIEU T. VO CLARK (APPELLANT)

**MAILED**
HONORABLE PAUL D. CONNICK, JR.
(APPELLEE)
DISTRICT ATTORNEY
JENNIFER C. VOSS (APPELLEE)
JOSHUA K. VANDERHOOFT (APPELLEE)
ASSISTANT DISTRICT ATTORNEYS
TWENTY-FOURTH JUDICIAL DISTRICT
200 DERBIGNY STREET
GRETNA, LA 70053